## STATE OF CONNECTICUT *v.* JERRY COPELAND
### (12828)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

*(Two justices dissenting)*

Argued June 4—decision released September 1, 1987

*John S. Pinney,* special public defender, with whom, on the brief, was *Thomas E. Gaffey,* for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, were *Mary Galvin,* assistant state's attorney, and *Mark Beubendorf* and *Alice Osedach,* legal interns, for the appellee (state).

CALLAHAN, J. The defendant was charged by substitute information with the crime of arson in the first degree in violation of General Statutes § 53a-111 (a) (1).[1] He pleaded not guilty and elected a trial to the court. He was found guilty, and sentenced to a term of imprisonment of ten years. On appeal, he claims that the trial court erred in denying (1) his motion to suppress a statement that he made while in custody, and (2) his motion to suppress clothing seized from him while he was in custody. We find no error.

---

[1] "[General Statutes] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . ."

At trial, the following uncontroverted factual circumstances were revealed. On the morning of March 4, 1984, Officer Frank Kilijanski of the New Haven police department was patrolling the Fair Haven section of New Haven. The officer testified that at approximately 2:30 a.m. he had seen a man, who was later identified as the defendant, walk up to an automobile stopped on Grand Avenue. The defendant commenced shouting at the woman who was driving, and grabbed at the door handle, trying unsuccessfully to pull open the car door. The defendant then walked away. Kilijanski spoke with the woman, who said she had never seen the defendant before, and that she was very "alarmed and upset." The officer radioed police headquarters to report a breach of the peace. At approximately 11:30 a.m. of the same day, another New Haven police officer observed the defendant in front of an apartment building on 88 James Street in New Haven. He had apparently been arguing with his girlfriend who lived in the basement apartment of the building and, when Kilijanski and other police officers arrived at the scene, the defendant became convinced that his girlfriend had reported him. At this point, Kilijanski arrested the defendant for breach of the peace. Thereafter he was released on a written promise to appear.

The next morning, Officer John Ross, also of the New Haven police department, was patrolling the Fair Haven section of New Haven. He testified that at approximately 2:30 a.m. he had seen the defendant walking up James Street from the direction of the apartment building where he had been arrested the previous day. Ross stated that he was certain it was the defendant because he had encountered him in the past. The defendant was the only person whom the officer observed on James Street.

Approximately two minutes after observing the defendant, Ross received a radio dispatch that there

was a fire at an apartment building at 88 James Street. Ross arrived at the scene, inspected the damage and interviewed two witnesses, Thurman Newton, Jr., and David E. Parks, both tenants in the building. Newton told Ross that on the day before the fire, the defendant had appeared at Newton's apartment in a very aggravated state. He was apparently upset with both his friend, Faye Singletary, who was in Newton's apartment at the time, and her roommate, Harry Davis, who the defendant believed had taken his tape recorder. Newton explained that the defendant had pounded on his apartment door, threatened Singletary, and finally left, yelling that he would be back. Parks, who also lived with Singletary and Davis in the basement apartment of the building, informed Ross that the defendant had come back to the basement apartment in the early morning hours of March 5, 1984, the day of the fire. The defendant repeatedly called for Davis to come out and give him his tape recorder. Parks further told Ross that the defendant had yelled, "Old man, you will come out," and that seconds later, something struck the basement window and burst into flames. As a result of his discussion with the two witnesses, Ross drove to the area where he had seen the defendant earlier that morning. He went inside a convenience store located at Grand Avenue and James Street, where he saw the defendant duck behind a food rack. When Ross asked the defendant if he knew what had happened at 88 James Street, the defendant denied having been there, or anywhere near James Street. He then agreed to accompany Ross to the crime scene.

After Ross and the defendant arrived at the scene of the fire, both Newton and Parks positively identified the defendant as the man they had described to Ross. Ross placed the defendant under arrest for disorderly conduct and threatening, and informed him of his rights pursuant to *Miranda* v. *Arizona,* 384 U.S.

436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Ross put the defendant in the back of his police cruiser, pending arrival of the prisoner conveyance van. Ross testified at trial that when he later removed the defendant from the car, he noted a strong smell of "flammable liquid" coming from the back seat where the defendant had been sitting. He stated that he had to roll down the windows in the cruiser to dissipate the "flammable liquid" fumes.

After the defendant had been transported to New Haven police headquarters, Ross spoke to John Esposito, a fire investigator with the New Haven fire department, who decided that the defendant's clothes should be seized "as evidence for a possible arson charge." Ross drove to the correctional institution on Whalley Avenue, picked up a change of clothing for the defendant, and then drove to police headquarters. Upon arriving, Ross went to the defendant's cellblock, handed the defendant the change of clothing he had obtained, and asked him for his clothes. The defendant responded: "Why do you want my clothes, they don't smell like gasoline?" The defendant then disrobed, and his jacket, pants and sneakers were placed in plastic bags. Subsequent laboratory testing of the clothing confirmed the presence of gasoline on them.

The next day, the defendant's briefcase was discovered in an alleyway near the apartment building where the fire had occurred. Officer Kilijanski, who had picked up the briefcase, testified that it had a "very strong" smell of gasoline. That same day, after again being advised of his *Miranda* rights, the defendant was interviewed by Esposito and Detective Vincent Fumiatti of the New Haven police department's arson squad. Both officers testified that the defendant's clothing, which had been returned as evidence in plastic bags, smelled of gasoline. The defendant agreed during the interview that his clothing had an odor of gasoline, but claimed

that this was because he had been working on his sister's car. He did admit, however, that he had been at the James Street apartment building just before he had gone to the convenience store where Ross found him.[2] The defendant was then arrested for and charged with arson.

Prior to trial, the defendant moved to suppress both the statement that he had made in his cellblock to Officer Ross concerning his clothes, and his clothes that were seized without a warrant while he was in custody. Both motions were denied by the trial court. After a trial to the court, the defendant was convicted of arson in the first degree. This appeal followed.

I

The defendant first argues that the statement made by him when his clothes were taken by Ross while he was at the New Haven police headquarters was improperly admitted at trial. He moved to suppress the statement on the ground that it was the product of a custodial interrogation without proper advisement and waiver of his rights pursuant to *Miranda* v. *Arizona,* supra. The trial court denied the motion, holding that the statement had been volunteered and thus that *Miranda* was inapplicable to the facts of this case. We agree with the trial court's conclusion.

We have consistently held that two conditions must exist before a criminal suspect is entitled to *Miranda* warnings: (1) the defendant must be in the custody of law enforcement officials; and (2) the defendant must be subjected to interrogation. *State* v. *Burak,* 201 Conn. 517, 531, 518 A.2d 639 (1986); *State* v. *Doehrer,* 200 Conn. 642, 646, 513 A.2d 58 (1986); *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986). There is no

---

[2] On appeal, the defendant does not challenge the admission of this statement at trial.

dispute that the defendant was in custody. Thus, the only issue we must address is whether the defendant was subjected to interrogation when he made the statement in question.

In *State* v. *Vitale,* 197 Conn. 396, 411–12, 497 A.2d 956 (1985), we indicated that the term "interrogation" under *Miranda* refers both to express questioning and to any words or actions on the part of the police " 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " Id., 411, quoting *Rhode Island* v. *Innis,* 446 U.S. 291, 301–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). A statement which is not elicited as a result of interrogation, but is given freely and voluntarily without any compelling influence, is admissible in evidence. *State* v. *Burak,* supra; *State* v. *Vitale,* supra, 412.

The defendant has the initial burden of proving interrogation. *State* v. *Doehrer,* supra, 647. The record in this case indicates that Ross merely asked the defendant for his clothing, while handing him a change of clothing. There is no evidence in the record that the officer asked the defendant any questions concerning the breach of the peace charge, the disorderly conduct charge, or the impending arson charge. Nor did the officer initiate any other conversation with the defendant. Cf. *State* v. *Burak,* supra; *State* v. *Vitale,* supra, 411–12. After Ross's request, the defendant blurted out the statement, "Why do you want my clothes, they don't smell like gasoline?" On the basis of this evidence, we conclude that the defendant was not subjected to any words or actions of Ross that the officer should have known were reasonably likely to elicit an incriminating response from the defendant. See *State* v. *Stankowski,* 184 Conn. 121, 136, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); cf. *State* v. *Krajger,* 182 Conn. 497, 499 n.2, 438 A.2d 745 (1980). Since there was no "interroga-

tion" there was no need for *Miranda* warnings and the defendant's statement was properly admitted into evidence.

## II

The defendant next claims that the clothing that he had been wearing at New Haven police headquarters, which was later introduced into evidence, should have been suppressed as the product of an unconstitutional search and seizure under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. We disagree.

The defendant contends that because he was initially arrested for disorderly conduct and threatening, Ross should have seized only evidence relating to those crimes. Therefore, he argues that the seizure of his clothes was not the result of a search incident to an arrest, and that the police should have obtained a warrant before seizing the clothing. The state argues in response that a police officer may seize *any* evidence of a crime he finds during a search incident to a lawful custodial arrest. We conclude that the trial court was correct in ruling that the search and seizure of the clothing were incident to a lawful arrest.[3]

It is well settled that "[t]he Fourth Amendment to the United States constitution protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures.'

---

[3] Probable cause for an arrest is determined by the objective facts available to the officer at the time of arrest. *Beck* v. *Ohio,* 379 U.S. 89, 93–95, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *United States* v. *Lester,* 647 F.2d 868, 873 (8th Cir. 1981); *State* v. *Perry,* 195 Conn. 505, 508–509, 488 A.2d 1256 (1985). The trial court in this case did not make a specific finding that there was probable cause to arrest the defendant for the arson, and it is well established that we do not find facts on appeal. *Lupien* v. *Lupien,* 192 Conn. 443, 445, 472 A.2d 18 (1984); *Anderson* v. *Anderson,* 191 Conn. 46, 51, 463 A.2d 578 (1983). In this case, however, it is obvious from the uncontroverted testimony in the record that probable cause existed to arrest the

Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. '[A] search conducted without a warrant issued upon probable cause is *"per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." ' *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); see *Stoner* v. *California,* 376 U.S. 483, 486, 84 S. Ct. 889, 11 L. Ed. 2d 856, reh. denied, 377 U.S. 940, 84 S. Ct. 1330, 12 L. Ed. 2d 303 (1964); *State* v. *Zindros,* 189 Conn. 228, 237, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984)." *State* v. *Badgett,* 200 Conn. 412, 423-24, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). One recognized exception to the warrant requirement is where the search has been undertaken "incident to a lawful custodial arrest." *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *United States* v. *Edwards,* 415 U.S. 800, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974); *United States* v. *Robinson,* 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State* v. *Badgett,* supra, 424. Exceptions to the warrant requirement

defendant for arson, as well as for disorderly conduct and breach of the peace. Therefore, a remand of this case to the trial court for a determination of probable cause is unnecessary. *United States* v. *Bethea,* 598 F.2d 331, 334 (4th Cir.), cert. denied, 444 U.S. 860, 100 S. Ct. 124, 62 L. Ed. 2d 81 (1979); *United States* v. *Montos,* 421 F.2d 215, 219 n.1 (5th Cir.), cert. denied, 397 U.S. 1022, 90 S. Ct. 1262, 25 L. Ed. 2d 532 (1970); *State* v. *Callari,* 194 Conn. 18, 20, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985); cf. *State* v. *Asherman,* 193 Conn. 695, 704-10, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

" 'have been jealously and carefully drawn'; *Jones* v. *United States,* 357 U.S. 493, 499, 78 S. Ct. 1253, 2 L. Ed. 2d 1514 (1958); and the burden is on the state to establish the exception." *State* v. *Badgett,* supra.

The search incident to an arrest exception to the warrant requirement "has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, *and evidence of crime* when a person is taken into official custody and lawfully detained. *United States* v. *Robinson,* supra, [234]." (Emphasis added.) *United States* v. *Edwards,* supra, 802–803; see generally 2 W. LaFave, Search and Seizure (2d Ed.) § 5.2. In this case, it is the state's claim that the search and seizure were conducted not for weapons or instruments of escape, but to search for evidence of a crime, specifically, the arson. The defendant cites a number of cases for the proposition that a search incident to an arrest is limited, however, to preserving evidence of the crime for which the defendant has been arrested. See, e.g., *United States* v. *Robinson,* supra; *Preston* v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964); *Agnello* v. *United States,* 269 U.S. 20, 46 S. Ct. 4, 70 L. Ed. 145 (1925); cf. *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967) (emphasizing that there must be a nexus between the item to be seized and the criminal behavior, that is, *probable cause* to believe that the evidence sought will aid in a particular apprehension or conviction). He reasons that this exception was never intended as a general investigatory tool by which police could conduct unlimited searches for any evidence they desired. While we agree that this exception to the warrant requirement should not be used as a pretext to search for any and all evidence; see *Klingler* v. *United States,* 409 F.2d 299, 304–305 (8th Cir.), cert. denied, 396 U.S. 859, 90 S. Ct. 127, 24 L. Ed. 2d 110 (1969); we conclude that there is no evidence in the record to support a finding

in this case that the search was of such a nature. In addition, we disagree that a search incident to an arrest must be limited to evidence of the crime for which the defendant has been formally charged.

First, we note that all the cases cited by the defendant were decided prior to the United States Supreme Court decision in *United States* v. *Edwards,* supra. There, the defendant had been lawfully arrested and charged with attempting to break into a post office, at which point he was taken to the local jail and placed in a cell. Shortly after he had been arrested, an investigation at the scene of the break-in revealed that the attempted entry had been made through a wooden window, which apparently had been pried open with a pry bar, leaving paint chips on the window sill. The next morning, as a result of this investigation, police officers purchased a change of clothing for the defendant to substitute for the clothing which he had been wearing at the time of and since his arrest. His clothing was then taken from him and held as evidence. Subsequent examination of the clothing revealed paint chips which matched the samples that had been taken from the window. This evidence was admitted at trial over the defendant's objection that it was not admissible because the warrantless seizure of his clothing was invalid under the fourth amendment. In upholding the search and seizure in this case, the United States Supreme Court reasoned that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be seized without a warrant. Id., 805–808; cf. *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730, reh. denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243 (1967). While we recognize that the evidence that was seized in *Edwards* was connected with the specific crime with which the defendant had been charged; *United States*

v. *Edwards,* supra, 808 n.9; the reasoning of the case is, nevertheless, applicable to the situation before us. The focus in *Edwards* was not on the nature of the specific charge against the defendant, but on whether the police could reasonably have searched the defendant at the time and place of his arrest.[4]

A review of the record indicates that, at the time of the defendant's arrest in this case, the police had probable cause to arrest the defendant on a charge of arson. The arresting officer had the following information available to him: The defendant had been at the scene of the fire both the day before and the day of the fire arguing with and shouting at the tenants in the basement apartment where the fire occurred. The last time he was there was seconds before an object was thrown through the basement window that burst into flames. Officer Ross had seen the defendant walking down James Street from the direction of the apartment building only minutes before receiving a radio dispatch concerning the fire. In addition, after interviewing two witnesses at the crime scene, Ross drove to a nearby convenience store hoping to find the defendant. Upon entering the store, the defendant, who was inside, ducked behind a food rack. After denying being at the apartment building, the defendant accompanied the

---

[4] In *United States* v. *Edwards,* 415 U.S. 800, 808 n.9, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974), the United States Supreme Court indicated in a footnote to its opinion that its holding was not to be interpreted as leaving law enforcement officials subject to no restraints. "This type of police conduct 'must [still] be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.' *Terry* v. *Ohio,* 392 U.S. 1, 20 [88 S. Ct. 1868, 20 L. Ed. 2d 889] (1968)." Id. The court noted that there was no question that there was probable cause for the search and seizure of the defendant's clothing and that the defendant was arguing only that a warrant should have been served. Id. The court went on to state: "We thus have no occasion to express a view concerning those circumstances surrounding custodial searches incident to incarceration which might 'violate the dictates of reason either because of their number or their manner of perpetration.' . . ." Id.

officer back to James Street, where he was identified by the two witnesses. Ross also testified that, at that time, the defendant had a strong odor of gasoline on his clothing.

It is clear that probable cause means more than mere suspicion. *Beck* v. *Ohio,* 379 U.S. 89, 93–95, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Brinegar* v. *United States,* 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information sufficient to justify the belief of a reasonable person that an offense has been or is being committed. *Beck* v. *Ohio,* supra, 91. The probable cause test then is an objective one. See generally 1 W. LaFave, supra, §§ 3.1, 3.2. Viewing this information in its totality, we conclude that the officer had objective probable cause to believe that the defendant had committed the arson. The fact that the officer did not formally charge the defendant with arson at the time of the arrest for disorderly conduct and breach of the peace does not render the subsequent search and seizure of the defendant's clothing unreasonable under the fourth amendment. See *Cupp* v. *Murphy,* 412 U.S. 291, 296, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973); *United States* v. *Lester,* 647 F.2d 868, 873 (8th Cir. 1981); *Thomas* v. *State,* 395 So. 2d 280, 281 (Fla. App. 1981); cf. *Rawlings* v. *Kentucky,* 448 U.S. 98, 112, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *United States* v. *Ruigomez,* 702 F.2d 61, 66–67 (5th Cir. 1983); *Dixon* v. *State,* 343 So. 2d 1345, 1347 (Fla. App. 1977); *Hatcher* v. *State,* 274 Ind. 230, 234, 410 N.E.2d 1187 (1980).

There is no error.

In this opinion Shea and Covello, Js., concurred.

PETERS, C. J., dissenting. I disagree with the majority's determination, in part II, that this court has the authority to make a factual finding that the police had the authority to arrest the defendant for arson at the time when his clothing was seized. The defendant does not contest the validity of his arrest for disorderly conduct and breach of the peace. The state concedes that the evidence that the police seized bore no relationship to the crime for which the defendant was nominally arrested. The majority has now decided that this court can validate the search and seizure of this evidence as incident to a legal arrest because the defendant could validly have been arrested for the crime of arson. The testimony of record on which the majority relies might well, on remand, persuade the trial court to make the appropriate finding that the police had probable cause to arrest the defendant for arson. Remand is nonetheless the correct procedure because it allows the appropriate judicial authority to determine the credibility of the witnesses and the reliability of their observations. Acccordingly, I dissent.

In adjudicating the validity of the search and seizure that the defendant's appeal challenges, we must take into account the significant constitutional role that trial courts play in protecting the rights guaranteed both by the fourth amendment of the United States constitution and by article first, § 7, of the Connecticut constitution. To resolve the competing interests of the police and those whom they accuse of criminal activity, we have come to rely heavily on the critical judgment of trial courts for impartial findings of probable cause to search, to arrest, and to obtain a warrant. *State* v. *Badgett,* 200 Conn. 412, 429, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); *State* v. *Heinz,* 193 Conn. 612, 624, 480 A.2d 452 (1984); *State* v. *Zindros,* 189 Conn. 228, 236–37, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104

S. Ct. 1014, 79 L. Ed. 2d 244 (1984); *State* v. *Federici,* 179 Conn. 46, 53–54, 425 A.2d 916 (1979). When the trial court has exercised the authority thus conferred upon it, either expressly or implicitly, we have usually deferred to its judgment. We have even, on occasion, searched the record for support for the trial court's judgment, when its factual underpinnings were not clearly articulated. See, e.g., *State* v. *Callari,* 194 Conn. 18, 23–24, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985); *State* v. *Asherman,* 193 Conn. 695, 704–10, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). In these cases we did not, however, undertake to bypass entirely the role of the trial court in finding so crucial a constitutional fact as probable cause. I am not persuaded that we should extend these precedents, which support a judgment that the trial court in fact *made,* to validate this court's sua sponte determination of the reasonableness of a finding that the trial court *failed to make.*" ' "This court cannot find facts, nor, in the first instance, draw conclusions of facts from primary facts found, but can only review such findings to see whether they might legally, logically and reasonably be found." ' " *State* v. *Clark,* 160 Conn. 555, 556, 274 A.2d 451 (1970); *State* v. *Thompson,* 191 Conn. 360, 373, 464 A.2d 799 (1983), cert. denied, 465 U.S. 1006, 104 S. Ct. 999, 79 L. Ed. 2d 231 (1984); *State* v. *Grisgraber,* 183 Conn. 383, 384, 439 A.2d 377 (1981).

The position taken by the majority is furthermore flawed because it deprives the defendant of his due process right to notice and a fair opportunity to be heard. See *Cole* v. *Arkansas,* 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948); *Paulsen* v. *Manson,* 203 Conn. 484, 490, 525 A.2d 1315 (1987); *State* v. *Franko,* 199 Conn. 481, 491–92, 508 A.2d 22 (1986). Had the trial court focused its attention on whether there was prob-

able cause to hold the defendant for arson, he might then have been able, by cross-examination or by witnesses of his own, to refute the testimony that the majority now finds dispositive. See *State* v. *Kimbro,* 197 Conn. 219, 228, 496 A.2d 498 (1985). A remand would give the defendant his day in court on this issue. In other cases, most recently, for example, in *State* v. *Jarzbek,* 204 Conn. 683, 708, 529 A.2d 1245 (1987), and *State* v. *Badgett,* supra, 433–34, we have directed a remand to permit a constitutional lacuna in the record to be appropriately filled. This salutary procedure should be followed in this case.

For these reasons, I dissent.

ARTHUR H. HEALEY, J., dissenting. Initially, I do not disagree with the general legal principles stated in the opinion but rather in the failure of the majority to acknowledge in part II that it has arrogated to itself the factfinding function of the trial court in holding that probable cause had existed. I start by specifically referring to the majority's statement in part I: "At trial, the following uncontroverted factual circumstances were revealed." The majority does not point out that the entire trial was one to the court, and not before a jury, nor does it point out that the trial court, as the trier of fact, did not find all, if indeed any, of these "factual circumstances." It is clear from the majority's opinion that it is using the revelation of these "uncontroverted factual circumstances" as facts actually found. The "uncontroverted factual circumstances" which are referred to are not "facts" because the trial court did not find them nor did it even reach the issue of whether the police had probable cause to arrest the defendant for the crime of arson.

It is elemental that "[a] fact, however, is not admitted or undisputed simply because it is uncontradicted." *Freccia* v. *Martin,* 163 Conn. 160, 162, 302 A.2d 280

(1972); *Cutler* v. *MacDonald,* 174 Conn. 606, 610, 392 A.2d 476 (1978). Moreover, the circumstance that a "fact" was testified to and not directly contradicted by another witness is wholly insufficient to make it a fact that can be regarded as found by the trial court. *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 17, 392 A.2d 962 (1978); *Martin* v. *Kavanewsky,* 157 Conn. 514, 515, 255 A.2d 619 (1969). The trial court, after determining the credibility of the witnesses and the weight to be given their testimony, found no facts to justify the majority's conclusion that probable cause existed. While the majority *admits* that the trial court in this case "did not make a *specific finding* that there was *probable cause to arrest the defendant for the arson*" (emphasis added), it does not point out that the trial court did not even make such an implicit finding. The majority cannot do the latter because the trial court made *no* probable cause ruling at all. Rather, the majority states that "it is obvious from the uncontroverted testimony in the record that probable cause existed to arrest the defendant for arson, as well as for disorderly conduct and breach of the peace." It has, therefore, not only found facts in derogation of our appellate function, but it has done so without considering which of the "uncontroverted factual circumstances" the trial court deemed credible and what weight it accorded any or all of them. Credibility of witnesses and the weight of their testimony is a trial court function, not ours.

It is not our appellate function to find facts; in doing so, we step outside the permissible ambit of appellate review and misconceive our function. We do not sit "as in nisi prius" and certainly do not do so to make determinations of fact that go to probable cause. See *State* v. *Kimbro,* 197 Conn. 219, 228, 496 A.2d 498 (1985). In a suppression hearing, the trial court is the trier of fact. It first determines the facts and then determines

whether the facts it has found constitute probable cause. The former is obviously a fact-bound determination and the latter is at the very least a mixed question of fact and law. See *Beck* v. *Ohio,* 379 U.S. 89, 96, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964). We cannot "supply" facts not found by the trial court for a ruling not even made by the trial court. This is exactly what the majority does, particularly when it states: "Viewing this information in its totality, we conclude that the officer had objective probable cause to believe that the defendant had committed the arson. The fact that the officer did not formally charge the defendant with arson at the time of the arrest for disorderly conduct and breach of the peace does not render the subsequent search and seizure of the defendant's clothing unreasonable under the fourth amendment."[1] Whether the evidence recited might sustain a trial court's finding of probable cause is properly for the trial court to pass upon after an evidentiary hearing and after that court, not this court, has found the facts. I would, therefore, remand this case to the trial court with direction to hold an evidentiary hearing on the issue of probable cause.

Because of my view on part II of the opinion, I find it unnecessary to discuss part I. This is so because the defendant's statement in part I is so inextricably tied in time, place and impact with the validity of the taking of the defendant's clothing that any decision on that issue should await the result of the evidentiary hearing on probable cause which I would order.

Therefore, I respectfully dissent and would remand the case to the trial court for an evidentiary hearing on the issue of probable cause under part II.

---

[1] The majority does not indicate *when* the defendant was arrested for arson, formally or otherwise. It was, however, certainly *after* the search and seizure of the defendant's clothing.