## STATE OF CONNECTICUT *v.* DEREK J. JACKSON (10116)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued June 15—decision released August 25, 1992

*Laurel Adams,* deputy assistant public defender, with whom, on the brief, was *Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (2), and hindering prosecution in the first degree in violation of General Statutes § 53a-166 (a). The defendant claims that the trial court improperly (1) denied his motion to suppress, (2) restricted his right to cross-examine the state's principal witness, (3) instructed as to circumstantial evidence, and (4) failed to give a specific unanimity instruction on the conspiracy and hindering counts. The defendant also claims that his double jeopardy rights were violated when he was convicted both as a principal and for hindering prosecution. We affirm the trial court's judgment.

The jury reasonably could have found the following facts. On February 26, 1990, at approximately 8:15 p.m., the defendant was driving a late model brown Subaru on Dixwell Avenue in New Haven accompanied by Glenn Fisher and James Davis. In the vehicle there

was a loaded twenty-eight inch twelve-gauge, double-barrel shotgun with a white handle. As the victim, Christopher Garvin, walked down the street, the three men decided to rob him. The defendant pulled the car over to the side of the street. Fisher and Davis exited with the shotgun and robbed the victim at gunpoint. The victim was also struck across the back of his head with the barrel of the shotgun, causing the gun to discharge. Fisher and Davis then ran back to the Subaru where the defendant was waiting.

Two plainclothes detectives, Percy Gethers and Mary Fish, observed them as they ran to the car. The detectives were driving an unmarked police car. One of the men was observed carrying an object that appeared to be a rifle or shotgun with a white handle. The police pulled alongside the Subaru and Fish saw Davis place a shotgun on the rear seat of the car. She then rolled down her window, displayed her badge and handgun, and identified herself to the defendant as a police officer. The defendant smiled at her and drove off. The police pursued the speeding vehicle until the defendant slowed the car and Davis jumped out. As the cruiser approached Davis, he yelled, "I don't have it." The officers then continued to pursue the Subaru. Shortly thereafter, Fisher jumped out of the Subaru, without the shotgun. The defendant drove onto Prospect Street, and bolted from the car, leaving it in gear with both doors open. The car rolled into the curb. The defendant was apprehended by a uniformed police officer and returned to the automobile.

When Gethers and Fish arrived, they witnessed the defendant's being apprehended. Fish approached the Subaru and saw the shotgun lying in plain view on the back seat. She left it there and informed the defendant that he was under arrest for carrying a weapon in a motor vehicle. The defendant then stated that he had not been driving the car and that the car did not belong to him.

Later that evening, the victim, whose head injury required fifteen stitches, positively identified Fisher, the shotgun and a hat worn by one of his assailants.

I

The defendant first claims that the trial court improperly denied his motion to suppress the oral statements that he made at the time of his arrest in which he denied owning and operating the Subaru. He claims that these statements were inadmissible because Fish subjected him to a custodial interrogation without informing him of his constitutional privilege against self-incrimination, commonly referred to as the *Miranda* rights.[1] He argues that any waiver of his privilege against self-incrimination was not made knowingly, intelligently and voluntarily, and that the statements themselves were not voluntarily given.

It is undisputed that the defendant was in custody, that he was not informed of his *Miranda* rights and that Fish did not ask any questions of the defendant either before or after he made these statements. She was unsure whether she asked the defendant to produce his license and registration. Fish did record both statements in her police log.

At trial, the defendant testified for the limited purpose of establishing that while he was in fact the driver of the Subaru, he was not its record owner. Following the court's denial of the defendant's motion to suppress the shotgun, the defendant sought to have his statements suppressed. The court determined that even if Fish had requested the defendant to produce identification, this request did not amount to an interrogation and the defendant had made the statements voluntarily.

[1] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Our Supreme Court has consistently held that "two conditions must exist before a criminal suspect is entitled to *Miranda* warnings: (1) the defendant must be in the custody of law enforcement officials; and (2) the defendant must be subjected to interrogation. *State* v. *Burak,* 201 Conn. 517, 531, 518 A.2d 639 (1986); *State* v. *Doehrer,* 200 Conn. 642, 646, 513 A.2d 58 (1986); *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986)." *State* v. *Copeland,* 205 Conn. 201, 206, 503 A.2d 603 (1987). The sole issue for our determination is whether the defendant was subjected to interrogation when he made the statements in question.

The term "interrogation" under *Miranda* refers both to express questioning and to any words or actions on the part of the police " 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State* v. *Vitale,* 197 Conn. 396, 411, 497 A.2d 956 (1985), quoting *Rhode Island* v. *Innis,* 446 U.S. 291, 301–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). "A statement which is not elicited as a result of interrogation, but is given freely and voluntarily without any compelling influence, is admissible in evidence." *State* v. *Copeland,* supra, 207. It is the defendant's burden to show that he was interrogated. *State* v. *Doehrer,* supra, 647.

While the state agrees that Fish was a law enforcement officer, and that the defendant was in custody for the purpose of *Miranda,* it argues that the defendant failed to sustain his initial burden of showing that he was subjected to interrogation. We agree.

The record in this case indicates that Fish properly placed the defendant under arrest and informed him so. There is no evidence that she asked the defendant any questions concerning the shotgun or the car chase. She initiated no conversation with the defendant other than perhaps asking to see his license and registration.

A request for identification, following an arrest, is intended solely to gather information for the purpose of the booking process and does not require warning, in accordance with the rules laid down in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See *State* v. *Evans,* 203 Conn. 212, 226–27, 523 A.2d 1306 (1987).

The defendant claims that Fish's informing him of the arrest impelled him to answer. We do not agree. The defendant was properly arrested and informed of the crime for which he was arrested. Fish's actions in this regard did not amount to coercive conduct designed to elicit an incriminating response. On the basis of this evidence, we conclude that the trial court properly found that the defendant was not subjected to interrogation and that Fish's informing the defendant of the reason for his arrest was not an act reasonably likely to elicit an incriminating response from the defendant. Because no interrogation took place, *Miranda* warnings were not necessary and the defendant's statements were properly admitted into evidence.

The defendant also claims that irrespective of *Miranda* warnings, the state did not bear its burden of proving that the statements were made voluntarily.

The use of an involuntary confession in a criminal trial is a violation of due process, and the state has the burden of proving the voluntariness of the statement by a fair preponderance of the evidence. *State* v. *Madera,* 210 Conn. 22, 39, 554 A.2d 263 (1989). While the determination of voluntariness is a question of fact; *State* v. *Derrico,* 181 Conn. 151, 162–63, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); an independent and scrupulous examination of the entire record is necessary to ascertain whether the trial court's finding is supported by substantial evidence. *State* v. *Schroff,* 206 Conn. 182, 196, 536 A.2d 952 (1988). Ultimately, the test of voluntari-

ness is whether an examination of the totality of the circumstances shows that the police action complained of "was such as to overbear the defendant's will to resist and bring about a confession, not freely self-determined." *State* v. *Gonzalez*, 206 Conn. 213, 221–22, 537 A.2d 460 (1988).

Under all of the circumstances, we cannot conclude by a fair preponderance of the evidence that the defendant's statements were made as a result of promises or threats directed at him. He was not coerced nor were any improper inducements employed by the police. On the basis of the record before us, we conclude that there was ample evidence to meet the necessary standard of proof of voluntariness.

## II

The defendant claims that he was not allowed fully and effectively to cross-examine the victim and was thus deprived of his constitutional rights under the sixth and fourteenth amendments to the federal constitution, and article first, § 8, of the Connecticut constitution.

The following facts are relevant to this claim. Prior to trial, the state moved in limine, over the defendant's objection, to prohibit the defense from cross-examining the victim about his prior felony convictions. These convictions were possession of narcotics, carrying a pistol without a permit and failure to appear. The trial court determined that the felony convictions were not probative of credibility and therefore limited the defendant's counsel to eliciting the fact of each conviction but not the names of the felonies. Defense counsel took no exception to the ruling, stating, "That's fine, Your Honor." On direct examination, the victim testified that he had been convicted of three crimes in 1989. On cross-examination, the defendant neither inquired whether these convictions were for felony offenses, nor questioned the victim in any manner about his prior record.

The defendant not only failed to preserve this claim, review of which he now seeks under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 576 A.2d 823 (1989), but he clearly consented to the trial court's ruling.

The defendant claims for the first time on appeal that the trial court's ruling prevented him from impeaching the victim's veracity, thereby depriving him of a theory of defense that the incident was not a robbery but rather an aborted drug buy of which the defendant had no knowledge. At no time did the defendant raise this theory before the trial court. The record, therefore, is inadequate to review this portion of the defendant's claim. *State* v. *Golding,* supra, 239–40.[2]

Our limited review of the claimed constitutional violation, without the necessity of further analysis, leads us to conclude that the defendant cannot prevail because he has failed to demonstrate that the claimed constitutional violation clearly exists and clearly deprived him of a fair trial.

### III

The defendant next claims that the trial court's instruction on the application of the standard of proof beyond a reasonable doubt to the underlying facts relating to circumstantial evidence violated his federal and state constitutional rights to a fair trial and to present a defense. The defendant claims that the trial court improperly failed to inform the jury that it should apply

[2] To prevail on an unpreserved claim of error, a defendant must show (1) that the record is adequate to review the alleged claim of error, (2) that the claim is of constitutional magnitude alleging the violation of a fundamental constitutional right; (3) that the alleged constitutional right clearly exists and clearly deprived him of a fair trial, and (4) that if subject to harmless error analysis the state has failed to demonstrate harmfulness of the alleged constitutional violation beyond a reasonable doubt. *State* v. *Golding,* 213 Conn. 233, 239–40, 576 A.2d 823 (1989).

a lesser standard of proof to the circumstantial evidence presented by the defendant than to that presented by the state, and therefore placed on him an unconstitutional burden to prove beyond a reasonable doubt the inferences on which he relied.

The trial court charged the jury as follows: "The state does not have to prove each and every fact that comes into issue. It is only the essential elements of the crime . . . that must be proved beyond a reasonable doubt. Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of other facts or set of facts. Such an inference may be made provided two elements in the application of this rule are satisfied: That the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt; and that the inference asked to be drawn is logical and reasonable and not the result of speculation and conjecture. You must be satisfied that the fact to be inferred has been proven beyond a reasonable doubt. It is, however, only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt."

The defendant did not properly preserve this claim for appellate review as he neither requested an appropriate instruction nor noted his exception to the court's circumstantial evidence instruction as given. The defendant did request a charge dealing with reasonable conclusions to be drawn from the evidence but did not request a charge that facts inferable from the circumstantial evidence presented by the defendant need not be proven beyond a reasonable doubt.

We have recently rejected similar claims involving a similar or identical instruction. *State* v. *Tinsley,* 24 Conn. App. 685, 591 A.2d 448 (1991); *State* v. *Willis,* 24 Conn. App. 678, 591 A.2d 444 (1991), aff'd, 221 Conn. 518, 605 A.2d 1359 (1992); *State* v. *Rivera,* 24 Conn. App. 670, 591 A.2d 440, cert. denied, 219 Conn. 914, 593 A.2d 139 (1991). The defendant asks that we distinguish *State* v. *Ortiz,* 217 Conn. 648, 588 A.2d 127 (1991), and review his claim under *Evans-Golding.* The defendant cannot demonstrate, however, that the court's instruction amounted to a constitutional violation, depriving him of a fair trial. Our review of the entire charge reveals that the jury was properly instructed on the state's burden of proof of every essential element of the crime charged beyond a reasonable doubt and on the presumption of innocence enjoyed by the defendant.[3] It is not reasonably possible that the instruction misled the jury to apply a burden of proof "beyond a reasonable doubt" to the circumstantial evidence offered by the defendant.

## IV

The defendant next claims that the trial court violated his right to a unanimous jury verdict under both federal and state constitutions by failing to give a specific unanimity instruction with respect to the conspiracy and hindering prosecution counts.

By its charging document, the state alleged that the defendant had conspired to commit robbery by agreeing with "one or more persons, to wit Glen Fisher *or*

---

[3] The trial court instructed: "The accused does not have to prove that he did not commit the offense; the state must prove that he did. The presumption of innocence applies to each and every element of the crime. . . . Its only effect is to place upon the state the burden of proving the defendant's guilt beyond a reasonable doubt . . . . It is only the essential elements of the crime which I will explain to you that must be proved beyond a reasonable doubt."

James Davis to engage in . . . ." (Emphasis added.) The defendant also was charged with hindering prosecution in that he rendered "criminal assistance to a person, to wit: Glen Fisher *or* James Davis." (Emphasis added.) The defendant argues that the trial court should have properly instructed the jury that it had to unanimously decide with whom the defendant agreed, Davis or Fisher, and to whom he rendered criminal assistance.

The defendant neither submitted a request to charge nor noted an exception to the instruction as given.[4] Our limited review fails to show that the state charged the defendant with crimes that contain multiple statutory subsections or multiple statutory elements that would have required a unanimity instruction. See *State* v. *Mancione,* 15 Conn. App. 251, 277, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). The defendant cannot prevail since he has failed to demonstrate that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra.

V

Finally, the defendant claims that his convictions as a principal in the commission of a robbery and for hindering prosecution violated his constitutional protection against double jeopardy. While the defendant admits that this claim was not raised at trial, he seeks review pursuant to *Evans-Golding.* We will review this unpreserved claim because "it is 'a claim of double jeopardy based on multiple punishment for convictions obtained at a single trial.' " *State* v. *Tweedy,* 219 Conn. 489, 494 n.7, 594 A.2d 906 (1991).

[4] We do not accept the defendant's assertion that this issue was preserved because the defendant, after the jury had delivered its verdict, requested and was denied a polling of that jury.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. *State* v. *Chicano,* 216 Conn. 699, 705–706, 584 A.2d 425 (1990), cert. denied,     U.S.    , 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

" ' "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." ' " *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), quoting *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986). The test of whether two offenses are the same offense for double jeopardy purposes is whether each provision requires proof of a fact that the other does not. *State* v. *Greco,* 216 Conn. 282, 291, 579 A.2d 84 (1990). Convictions for two offenses arising out of the same criminal incident do not constitute double jeopardy if each crime contains an element not found in the other. *State* v. *Tweedy,* supra, 495. We determine whether each crime contains an element that the other does not by reviewing the statutes, the information, and the bill of particulars, if any, and not the evidence. Id. In the present case, each crime contains a distinct element not found in the other. Robbery requires a proof of larceny,[5] whereas hindering prosecution requires proof

---

[5] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

of criminal assistance to another who has committed a class A or B felony.[6] The charged crimes are not the same offense under the *Blockburger* analysis.[7] The information in this case does not, as the defendant claims it does, require the conclusion that the crimes are the same. Further, we conclude that the charges did not arise out of the same act or transaction. The defendant was charged as an accessory to robbery, not as a principal, and with hindering the prosecution of two others. The former crime relates to the "commission of the robbery and immediate flight therefrom," and the latter to rendering criminal assistance *after* the crime had been committed. As a result, the defendant's double jeopardy claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] General Statutes § 53a-166 provides: "(a) A person is guilty of hindering prosecution in the first degree when he renders criminal assistance to a person who has committed a class A or class B felony or an unclassified offense for which the maximum penalty is imprisonment for more than ten years."

[7] The traditional test for double jeopardy was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which allowed a defendant to be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other.