STATE OF CONNECTICUT *v.* HARRY J. BRUNSON
(12082)

FOTI, LANDAU and SPEAR, Js.

Argued October 25, 1994—decision released January 10, 1995

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, and *Gregory Takacs,* certified legal intern, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael Pepper,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[1] and carrying a pistol without a permit in violation of General Statutes § 29-35.[2] The defendant received a total effective sentence of twenty years imprisonment, suspended after sixteen years, followed by five years probation. On appeal, he claims (1) that the trial court improperly denied his motion to suppress statements made by him, and (2) that there was insufficient evidence to sustain a conviction under General Statutes § 29-35. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 19, 1991, just prior to midnight, in the vicinity of Newhall and Lilac Streets in New Haven, Shawn Williams was the victim of a gunshot wound. The bullet entered his chest and exited his back. He sustained substantial blood loss and was rushed to Yale-New Haven Hospital where surgery was performed. Thereafter, he told Detective Leroy Dease of

---

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

the New Haven police department that he was shot by someone he knew as "Fat Harry." Several months before the shooting, Williams had had a fight with this person while in jail. Williams related that he was standing at the corner of Newhall and Lilac Streets, arguing with someone, when his assailant walked up to him and shot him in the chest.

Dease left the hospital and returned later that day with ten photographs of black males, one of which depicted the defendant. Williams identified the photograph of Harry Brunson, the defendant, as being a photograph of the man who had shot him. On the basis of Williams' identification, Dease applied for and received an arrest warrant for the defendant.

## I

The defendant first claims that the trial court improperly denied his motion to suppress certain statements that he had made to Dease. The following additional facts are relevant to the resolution of this claim. On December 31, 1991, officers from the Hamden police department arrived at the defendant's home to arrest him on the New Haven warrant. The defendant was not at home, but his mother was advised of the outstanding warrant. Thereafter, the defendant, accompanied by his parents, presented himself at the New Haven police station. Dease met them in the lobby and escorted them to his office. In the defendant's presence, his mother had a conversation with Dease concerning why the police wanted to arrest her son. During this conversation, the defendant stated that he did not shoot anyone.[3] A conversation between the detective and the defendant's parents, unrelated to the incident, then took place. Dease asked the defendant's parents

---

[3] During oral argument, the defendant, through counsel, claimed that only the statements made by him after he was given *Miranda* warnings are relevant to this appeal. Therefore, this statement is not at issue.

to leave the room. After they left, he obtained a copy of the arrest warrant and advised the defendant of the charges against him. Dease then read the defendant his *Miranda*[4] rights. The defendant indicated that he understood his rights and, without being questioned further, immediately stated that he did not shoot Williams. He stated that he had been present at the time of the shooting but he did not know who had shot Williams.

In denying the defendant's motion to suppress the statements made by him after the *Miranda* warnings,[5] the trial court found that the defendant was in custody at the time and that the state had sustained its burden of showing that he had voluntarily and intelligently waived his rights. The court also found that the statements made after the *Miranda* warnings were given were spontaneous and not made in response to interrogation.

The defendant asserts that the trial court's finding that the state proved by a preponderance of the evidence a knowing and voluntary waiver by the defendant of his *Miranda* rights is clearly erroneous. The defendant argues that he was never asked whether he wanted to waive his rights, nor was he asked to sign a written waiver. He claims that the trial court's only stated justification for finding a voluntary and intelligent waiver was that "the defendant understood his

---

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The trial court, after making specific findings of fact in an oral decision, denied the defendant's motion to suppress. The transcript of the findings is not signed by the judge, as is required by Practice Book § 4059. It is the appellant's burden to have the transcript signed, consistent with his responsibility of providing an adequate record. *State* v. *Rios*, 30 Conn. App. 712, 715, 622 A.2d 618 (1993). Although not fully complying with Practice Book § 4059, we will nonetheless review the defendant's claim in this case because the trial court made adequate findings on the record. See *Fiddelman* v. *Redmon*, 31 Conn. App. 201, 209 n.6, 623 A.2d 1064 (1993).

rights . . . [and] had prior experience with having been arrested, having been advised of rights both by police and by the courts . . . prior to December 1991 . . . ." We need not consider this argument because the trial court specifically found that there was no interrogation, that is, that the statements made by the defendant were spontaneous and not in response to a question.[6]

Our Supreme Court has consistently held that "two conditions must exist before a criminal suspect is entitled to *Miranda* warnings: (1) the defendant must be in the custody of law enforcement officials; and (2) the defendant must be subjected to interrogation. *State* v. *Burak,* 201 Conn. 517, 531, 518 A.2d 639 (1986); *State* v. *Doehrer,* 200 Conn. 642, 646, 513 A.2d 58 (1986); *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986)." *State* v. *Copeland,* 205 Conn. 201, 206, 530 A.2d 603 (1987). The state concedes that the defendant was in custody at the time that the statements were given. The sole issue for our determination is whether the defendant was subjected to interrogation when he made the statements in question.

The term "interrogation" under *Miranda* refers both to express questioning and to any words or actions on

---

[6] While not obliged to review the transcripts of the evidentiary portion of the motion to suppress, and while such a review is not necessary for the determination of this issue, we have done so. We find that the court's conclusion that there had been a voluntary and intelligent waiver, based on a consideration of the surrounding circumstances, was supported by substantial evidence. The court heard testimony from Dease, the defendant, and both of the defendant's parents. While the court did not articulate all of the bases for its conclusion, the record is clear that along with the defendant's prior experiences and familiarity with police procedures, the court had evidence of his age, his ability to communicate and to answer questions in more than a monosyllabic fashion, his appearance and relative level of intelligence during his testimony, the fact that he did not seem either intoxicated or under the influence of any other drug at the police station, and that he at no time made a claim of mental or physical impairment. If called upon to do so, we could not conclude that the court's action was clearly erroneous.

the part of the police that they should know are reasonably likely to elicit an incriminating response. *State v. Jackson*, 28 Conn. App. 721, 725, 613 A.2d 846, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992). "A statement which is not elicited as a result of interrogation, but is given freely and voluntarily without any compelling influence, is admissible in evidence." *State v. Copeland*, supra, 205 Conn. 207. The burden rests upon the defendant to show that he was interrogated. *State v. Doehrer*, supra, 200 Conn. 647.

The trial court found the defendant's statements to be spontaneous, and not a result of interrogation. The record supports the court's determination in that the statements seem to have been made immediately after the defendant told Dease that he understood his rights. There appears to have been no time for Dease to have asked a question. Our review of the record indicates that the defendant did not sustain his burden of showing that he was interrogated, and we think that the trial court reasonably concluded from the evidence presented that the defendant's statements were spontaneous.

While the defendant bears the burden of proving that an interrogation took place, it is the state's burden, irrespective of *Miranda* warnings, to prove the statements were voluntary. There is no direct claim here that the statements were made other than voluntarily. The defendant's claim on this issue was that the evidence was insufficient for the court to have found a waiver of his *Miranda* rights. The defendant, while noting that "the trial court is in a unique position to judge the credibility of witnesses," does argue, however, that it "strains credibility" to find that the statements were spontaneous. This issue, while not articulated fully, warrants review on appeal.

The determination of voluntariness is a question of fact. *State v. Derrico*, 181 Conn. 151, 162–63, 434 A.2d

356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). "Ultimately, the test of voluntariness is whether an examination of the totality of the circumstances shows that the police action . . . 'was such as to overbear the defendant's will to resist and bring about [statements], not freely self-determined.' *State* v. *Gonzalez*, 206 Conn. 213, 221–22, 537 A.2d 460 (1988)." *State* v. *Jackson*, supra, 28 Conn. App. 726–27.

On the basis of the record before us, we conclude that there was sufficient evidence to allow the trial court to find that the defendant's statements were voluntarily given.

## II

The defendant next claims that the evidence was insufficient to sustain a conviction of carrying a pistol without a permit pursuant to General Statutes § 29-35. Section 29-35 prohibits the carrying of a pistol beyond a person's dwelling or place of business without a permit issued in accordance with General Statutes § 29-28.[7] Section 29-28 allows a local authority to issue a permit to an applicant who lives or has a place of business within that jurisdiction. A permit authorized under § 29-28 allows a person to carry a pistol only within the boundaries of that jurisdiction.[8] A necessary element of the crime of carrying a pistol without a permit is proof that the defendant had not been issued a valid permit to carry the firearm. See *State* v. *Anonymous*, 179 Conn. 516, 427 A.2d 403 (1980). The defendant contends that although the state proved that he did not have a per-

[7] See footnote 2.

[8] General Statutes § 29-28 (a) provides in pertinent part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority . . . such chief of police . . . may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same . . . . Said commissioner [of public safety] may, upon application, issue, to any holder of any such permit, a permit to carry a pistol or revolver within the state. . . ."

mit either in New Haven, where the shooting took place, or in the state of Connecticut, it failed to prove that he did not have a permit in Hamden, his place of residence. The defendant argues that by failing to prove that he did not have a permit in Hamden, the state failed to prove a necessary element of the crime charged.

The defendant's argument is based on his interpretation of §§ 29-35 and 29-28. He claims that § 29-35 incorporates by reference those provisions of § 29-28 that authorize various officials to issue a permit to carry a weapon, but not the provisions of § 29-28 that provide for geographical limitations on such permits. The defendant argues that the plain language of § 29-35 does not allow the extension of criminal liability from the prohibition on the carrying of a weapon without a local or state issued permit, to a prohibition on the carrying of a weapon beyond the jurisdictional limitation of the issuing authority.

The facts relevant to this claim are not disputed. The defendant, at the time of his arrest, lived in Hamden with his parents. The shooting took place in New Haven. The state did not prove that the defendant did not have a permit to carry a pistol in Hamden. The state argues that requiring proof that the defendant did not have a permit from Hamden would have been irrelevant, since a permit issued under § 29-28 from Hamden would not have authorized the defendant to carry a pistol in New Haven, where the shooting took place. We agree.

Sections 29-35 and 29-28 must be read together so as not to lead to a bizarre result. We do not read statutes in a vacuum. *State* v. *Jimenez*, 228 Conn. 335, 341, 636 A.2d 782 (1994); *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 303, 622 A.2d 1005 (1993). Thus, we conclude that § 29-35 incorporates,

by reference, both the authority to issue a permit *and* the geographical limitations found under the provisions of § 29-28. Given our reading of the statutes, the state is correct in asserting that if a permit had been issued in Hamden, it would only have allowed the defendant to carry a pistol locally in the town of Hamden. What was relevant here was whether the defendant had a New Haven permit or a state issued permit. Only those permits would have allowed the defendant to carry a pistol in the jurisdiction of New Haven. The state's evidence demonstrated that the defendant did not possess either of those permits. We find that the evidence presented at trial was sufficient to support the defendant's conviction under § 29-35.

The judgment is affirmed.

In this opinion the other judges concurred.