## STATE OF CONNECTICUT *v.* JAMES CALLARI
## (9538)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued May 3—decision released July 24, 1984

[1] See footnote 7, supra.

*Edward C. Lavallee,* public defender, for the appellant (defendant).

*C. Robert Satti,* state's attorney, with whom was *Michael L. Regan,* for the appellee (state).

GRILLO, J. The defendant James Callari was charged in an amended substituted information with two counts: (1) possession of more than one kilogram of a cannabis-type substance with intent to sell by a person who is not drug dependent at the home of Mr. and Mrs. Michael E. Brady on November 12, 1976, in violation of General Statutes § 19-480a (b),[1] and (2) conspiracy

---

[1] At that time, General Statutes § 19-480a provided: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON.

\* \* \*

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended

to commit that crime in violation of General Statutes §§ 53a-48[2] and 19-480a (b).

On September 15, 1978, on the date the trial was to begin, the defendant moved to suppress numerous items seized from the premises owned by the Bradys. After a full hearing, the court denied the motion. At the conclusion of the evidence at trial, the court granted the defendant's motion to dismiss the conspiracy count. The defendant was convicted on the first count of the information.

On his appeal,[3] the defendant contends that the court erred: in failing to apply the doctrine of collateral estoppel to his motion to suppress; in denying his motion to suppress the seized evidence; and in failing to instruct the jury to disregard the evidence admitted to prove the second count following the dismissal of that count by the court. We find no error.

On the basis of evidence presented at the suppression hearing, the trial court might have found that the police were engaged in an investigation of a suspected drug operation at the Brady residence in Salem. Several

except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] At that time, General Statutes § 53a-48 provided: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[3] On April 3, 1979, the state filed an appeal with this court citing as error the trial court's dismissal of the conspiracy charge. Since the state failed to brief this issue, we consider it abandoned. *State* v. *Daniels*, 180 Conn. 101, 104, 429 A.2d 813 (1980).

days prior to November 12, 1976, state police Sgt. Richard Hurley and several state police troopers observed automobiles registered to known drug dealers entering and leaving the Brady residence. They stopped several vehicles and found bricks of marihuana therein. One of the vehicles was a red pick-up truck in which the defendant and Michael Brady were passengers. After a brick of marihuana was found in the truck, they and the driver were arrested about 12:05 a.m. on November 13, 1976, and taken to state police barracks.

After Brady and the defendant were arrested and booked, Hurley, Sgt. William Smith and Trooper Martin Hart returned to the Brady residence without a search warrant. Hurley and Smith went to the door and knocked. When Mrs. Brady answered the door, Hurley, who was in civilian clothes, identified himself, told Mrs. Brady that her husband had been arrested and that the police believed there were drugs in the house. Mrs. Brady invited the officers into the kitchen. Hurley asked for her consent to search the house. Mrs. Brady granted the officer consent, first orally, then by signing a consent form.

Hurley went upstairs and looked into the rooms, including the one at the head of the stairs, allegedly occupied by the defendant. He saw a blue suitcase which, to the best of his recollection at the hearing, was on the floor. He picked it up and placed it on the bed; it was fairly heavy. Sticking out of the right hand corner of the suitcase, there was a clear plastic baggie in which he saw a green plant material that he perceived to be marihuana. He asked Mrs. Brady to get a screwdriver or knife, then tapped the two clasps, opened the suitcase and found a considerable amount more of the green plant material. Hurley testified that he did not know whose suitcase it was, and that it was only after he opened it that Mrs. Brady indicated that the suitcase belonged to "the guy from New Jersey" (meaning the

defendant, who was from New Jersey). The suitcase and its contents, as well as various other drugs and drug paraphenalia, were seized.

In court, Hurley identified the suitcase and its contents, including the plastic baggie with the green plant material and seven bricks of wrapped marihuana. He also identified photographs of the suitcase, the bricks and the baggie as they appeared shortly after the suitcase was opened, as well as photographs of the interior of the room in which the defendant had stayed for one or two nights prior to his arrest. The photographs, and the baggie and its contents were admitted into evidence at trial. At the request of defense counsel, Hurley demonstrated and described for the record how the suitcase appeared when he first saw it, fully closed with a portion of the baggie and green plant material sticking out. A book containing drug records and a balance scale containing marihuana found in the basement were also admitted into evidence.

From the evidence at the suppression hearing, the trial court might reasonably have determined that the subject room in which the suitcase was found was used by the Bradys as well as by guests. Mrs. Brady kept her clothes, her husband's clothes, and familiar personal items in the room. The subject room, one of three rooms on the second floor, was to the east side of a master bedroom. It was a combination of a junk room, a den and a bedroom. In it were strewn the belongings of many people who occupied the dwelling. When the state police first entered the room on November 13, 1976, there was clothing on the bureau and floor, trash on the floor, and numerous items on the desk and floor including a woman's jacket, a suitcase, and a plastic bag. The closet in the room contained a dress, shirts, pants, a child's jacket and dress, and numerous items on the floor. The trial court could readily have found

that the room was not being used exclusively by any one person. Cf. *State* v. *Cochran,* 191 Conn. 180, 463 A.2d 618 (1983).

Despite the evidentiary showing, the defendant claims that his motion to suppress the items seized at the Brady house should have been granted. It is conceded that at the earlier trial of Michael Brady, the court, *J. Shea, J.,* granted that defendant's motion to suppress. Thereafter, Brady was tried, convicted, and sentenced on June 29, 1978. The defendant in the present case now argues that since the court at the trial of Michael Brady suppressed the evidence seized from the house, concluding that consent to search was not given, the decision on that issue is dispositive of the present matter before the court. He maintains that the doctrine of collateral estoppel prevents the suppression issue from being relitigated. We disagree.

The trial court at the trial of Michael Brady found that the police lacked the consent necessary to conduct a warrantless search of the Brady house. The defendant in the present case, however, clearly has no standing to object to that search. The defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing. *State* v. *McLucas,* 172 Conn. 542, 546, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977). Critical to this standing determination is the defendant's showing that he possessed a legitimate expectation of privacy in the premises searched. *United States* v. *Payner,* 447 U.S. 727, 731, 100 S. Ct. 2439, 65 L. Ed. 2d 468, reh. denied, 448 U.S. 911, 101 S. Ct. 25, 65 L. Ed. 2d 1172 (1980); *State* v. *McLucas,* supra. From the evidence introduced at trial, it is clear that the defendant has no such privacy expectation. The defendant's status in the Brady house was at most that of a transient social guest. He slept in the subject room only one or two nights prior to his arrest. There is no evidence that any of his clothes were

kept there or that he intended to stay in the room again. On the basis of these facts, the defendant has no expectation of privacy in the house, and thus lacks standing to challenge the validity of the search. See *Payner* v. *United States,* supra; *State* v. *McLucas,* supra. The defendant's motion for application of the doctrine of collateral estoppel was therefore properly denied.

Although the defendant cannot challenge the search of the house and bedroom, he is not precluded from contesting the search of his suitcase, since by virtue of his ownership and the nature of the item, he possesses an expectation of privacy in it. Testimony in the present case reveals that the police found the defendant's locked suitcase on the bedroom floor. A baggie containing what was later found to be marijuana was sticking out of the corner of the suitcase. Seizure of this visible plant material was proper under the plain view doctrine. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *State* v. *Altrui,* 188 Conn. 161, 179, 448 A.2d 837 (1982). Police observation of this material led to a decreased expectation of privacy by the defendant in the suitcase. See *Arkansas* v. *Sanders,* 442 U.S. 753, 764 n.13, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979). The police were then justified in opening the locked suitcase and seizing any additional marihuana found inside. See *Texas* v. *Brown,* 460 U.S. 730, 739, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (officer's expertise and totality of circumstances gave officer degree of certainty equivalent to plain view of contents of container, even though contents not visible). Thus, the defendant's claim that the trial court erred in denying his motion to suppress must fail.

The defendant's final claim that the court should have instructed the jury to disregard certain evidence relative to the second count and removed that evidence

from their consideration is similarly without merit. At the close of the evidence, the trial court granted the defendant's motion to dismiss the conspiracy count. The defendant now claims that since this second count was dismissed, it was error for the jury to be allowed to consider all of the evidence. The defendant, however, neither submitted such a request nor took an exception to the charge given by the judge, which charge stated that the second count had been eliminated from the case. "In order properly to preserve for appeal a claimed error in the trial court's charge to the jury, a party must take an exception when the charge is given that distinctly states the objection and the grounds therefor." *State* v. *Miller,* 186 Conn. 654, 657, 443 A.2d 906 (1982), citing Practice Book §§ 315, 854, 3060F (c) (1) and (2). " 'The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials.' " *State* v. *Miller,* supra, 658, citing *Henderson* v. *Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). Since the defendant failed to preserve his claim, he cannot now complain that the court should have expanded its instruction.

There is no error.

In this opinion the other judges concurred.