## STATE OF CONNECTICUT *v.* ANDREW ALEXANDER
## (AC 29769)

Bishop, Harper and Foti, Js.

Argued March 18—officially released June 9, 2009

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. This appeal concerns the contours of the protections provided by the fourth amendment to the federal constitution.[1] The defendant, Andrew Alexander, appeals from the judgment of conviction, rendered

---

[1] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

after a conditional plea of nolo contendere pursuant to General Statutes § 54-94a, of possession of more than one kilogram of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), interfering with an officer in violation of General Statutes § 53a-167a (a), forgery in the second degree in violation of General Statutes § 53a-139 (a) (3) and possession of marijuana with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the trial court improperly denied his motion to suppress certain evidence after concluding improperly that he had failed to sustain his burden of establishing a subjective expectation of privacy in a common hallway in the apartment building in which he lived. We disagree and, accordingly, affirm the judgment of the trial court.

In December, 2007,[2] the court held hearings on the defendant's motion to suppress. At those hearings, the state presented evidence of the following events that led to the defendant's arrest. In March, 2006, Robert Martin and Christopher Lee, detectives with the Bridgeport police department (department), were assigned to the fugitive task force. During that assignment, they were part of Operation Park City, a joint operation consisting of the department, the state police, the United States Marshals Service and the Federal Bureau of Investigation. The operation's purpose was to serve multiple warrants secured by each entity over a two day period in and around Bridgeport.

On March 29, 2006, Martin and Lee went to 146 to 152 Dover Street, a single building consisting of six apartments, to serve eight rearrest warrants on Craig Wilson for failure to appear in the first and second degree. Martin had received information from a police informant that Wilson was at the address. When they

---

[2] On December 5, 10 and 20, 2007, the hearings were held.

arrived at the address, Martin and Lee, dressed in plain clothes with bulletproof vests and their badges hanging on chains around their necks, mounted the front porch. They were confronted with four doors numbered 146, 148, 150 and 152; of these, only number 148 was unlocked. They also noticed that the entire first floor appeared to be vacant with 'for rent' and 'for sale' signs posted in various windows. Martin called the telephone number on one of the signs and spoke with Fernando Ocampo, the owner of the building. Ocampo told Martin that only the third floor apartment at number 148 was occupied by a young man and his grandmother, who were Jamaican.[3]

Adjacent to the door numbered 148 were three unmarked doorbells. Martin and Lee, for reasons of safety, chose not to announce their presence by way of ringing any doorbell. They entered the unlocked door. Upon entry, they came upon stairs that led to the second floor and climbed them.[4] After passing through the second floor landing, they went up another flight of stairs that dead-ended at the door of the defendant's apartment. Once there, Martin knocked on the door, but did not announce that he and Lee were police officers. The defendant opened the door, without asking who was there, with a smile on his face.

Immediately upon the defendant's opening the door, Martin smelled an overwhelming odor of marijuana, so powerful as to suggest to him that there was a very large quantity of the substance present in the apartment. Due to his training and experience, Martin surmised at once that the presence of such a quantity of marijuana suggested the strong probability that weapons could also be present and decided to pat down the defendant.

---

[3] Wilson, with whom Martin was acquainted, was Jamaican as well.

[4] Number 148 Dover Street, the court found, was functionally a self-contained two-family apartment house with no access to any other residential units in the building.

Martin tried to pat down the defendant's waistband with both hands, but the defendant retreated into the apartment. Attempting to secure the defendant, who continued to retreat into the apartment as he resisted Martin's efforts, Martin tried to handcuff the defendant's left wrist.

The detectives entered the defendant's kitchen, and a struggle ensued. During the struggle with the defendant, Martin saw in plain view on a kitchen table a pile of marijuana and a scale. After a few minutes, Martin handcuffed the defendant and determined that he possessed no weapons. He then approached the pile of marijuana on the nearby table and discovered a large bag containing more marijuana. In total, there were more than nine pounds of marijuana found in the defendant's kitchen. No other individuals were discovered during a protective sweep of the apartment; however, at the defendant's insistence of retrieving a telephone number from his bedroom, Martin discovered several rolls of currency on the defendant's dresser, which were seized along with the contraband.

In its June 2, 2007 memorandum of decision, the court set forth the facts that it found to support its denial of the defendant's motion to suppress, generally accepted the state's evidence as accurate and noted that the defendant's testimony was not credible. It also found that 148 Dover Street was functionally a two-family house with a common hallway for egress and ingress. The court further found that the entry door to this hallway was unlocked when the detectives entered. Additionally, the court found that there was no evidence that other individuals were excluded from the hallway or that the defendant had the right to exclude others. As a result, the court found that the defendant had failed to sustain his burden of establishing that he had a subjective expectation of privacy in the hallway, and,

even if he had, it was not one that society would recognize as reasonable.

On the basis of these facts and after the denial of his motion to suppress the evidence seized after his arrest, the defendant entered a plea of nolo contendere to possession of more than one kilogram of marijuana with intent to sell by a person who is not drug-dependent, interfering with an officer, forgery in the second degree and possession of marijuana with intent to sell within 1500 feet of a school. This appeal followed. Further facts will be put forth as necessary.

On appeal, the defendant's sole claim is that the court improperly denied his motion to suppress after concluding that he did not have a protected privacy interest in the common hallway of 148 Dover Street leading from the entryway door to his third floor apartment. The defendant claims that his fourth amendment rights were violated by the detectives' entry into the common hallway without either a warrant or a valid exception to the warrant requirement.[5] We disagree and conclude that the defendant had neither a subjective expectation of privacy nor one that society would find reasonable and, therefore, that he lacks standing to challenge the warrantless entry of the police into the common hallway of his apartment building. The court properly denied his motion to suppress.

Preliminarily, we put forth the standard of review applicable to a motion to suppress. "Our standard of review of a trial court's findings and conclusions in

[5] Although the defendant briefed his claim to this court as a violation of the privacy protections contained in article first, § 7, of the state constitution, the issue was not presented to the trial court under that authority. He also did not seek review of his state constitutional claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Therefore, we will not consider it here because, as we have often stated, we will not consider claims that were not made before the trial court and raised for the first time on appeal. *McGuire* v. *McGuire*, 102 Conn. App. 79, 87, 924 A.2d 886 (2007).

connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance." (Citations omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843, 955 A.2d 43 (2008).

"The touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *State* v. *Joyce*, 229 Conn. 10, 20, 639 A.2d 1007 (1994). Absent such an expectation, the subsequent police action has no constitutional ramifications. *State* v. *Mooney*, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Brown*, 198 Conn. 348, 355, 503 A.2d 566 (1986). In order to meet this rule of standing . . . a two-part subjective/ objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances. . . . *State* v. *Joyce*, supra, 20. Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing; *State* v. *Callari*, 194 Conn. 18, 23, 478 A.2d 592 (1984),

cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985); and the trial court's finding [on the question of standing] will not be overturned unless it is legally or logically inconsistent with the facts found or involves an erroneous rule of law. *State* v. *Pittman*, 209 Conn. 596, 601, 553 A.2d 155 (1989)." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 92–93, 675 A.2d 866 (1996).

"A tenant has a reasonable expectation of privacy 'in areas where his use is exclusive, that is, where he has the legal right to control access and to exclude others.' *United States* v. *Holland*, 755 F.2d 253, 255–56 [(2d Cir.), cert. denied, 471 U.S. 1125, 105 S. Ct. 2657, 86 L. Ed. 2d 274 (1985)] (legitimate expectation of privacy of apartment tenant exists only in an area subject to the tenant's exclusive control); *United States* v. *Arboleda*, 633 F.2d 985, 991 (2d Cir. 1980) [cert. denied, 450 U.S. 917, 101 S. Ct. 1362, 67 L. Ed. 2d 343 (1981)] (apartment dweller's legitimate privacy expectation exists in area where tenant has the right to exclude others); *State* v. *Ragsdale*, 381 So. 2d 492, 497 (La. 1980) (apartment dweller had reasonable expectation of privacy in completely enclosed patio outside his apartment unit); *Commonwealth* v. *Hall*, 366 Mass. 790, 794–95, 323 N.E.2d 319 (1975) (tenant has expectation of privacy in areas over which he can control access)." *State* v. *Torres*, 36 Conn. App. 488, 500, 651 A.2d 1327, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995).

After a thorough review of the record, we conclude that the court properly determined that the defendant cannot establish a reasonable expectation of privacy in this case because he did not have exclusive control over the hallway and could not control access to or exclude others from the hallway.[6] First, the court found

[6] We note that the defendant has made no claim that the stairway to the third floor apartment should be treated differently from the entire hallway.

that 148 Dover Street was functionally a two-family house and that the hallway was a common hallway of egress and ingress for both apartments. See *State* v. *Reddick*, 207 Conn. 323, 334 n.5, 541 A.2d 1209 (1988) (diminution of expectation of privacy when common hallway in two-family house means of ingress and egress to both apartments). The court also found that the door leading into the common hallway was unlocked at the time the detectives entered and that this determination undermined the defendant's assertion that he kept the door locked at all times. Cf. *State* v. *Torres*, supra, 36 Conn. App. 501 (fact that police needed key to enter common hallway insignificant in determining whether defendant had expectation of privacy). This fact indicates that the defendant had not maintained the location and the items within it in a private manner at the time of the detectives' entry; see *State* v. *Boyd*, 57 Conn. App. 176, 185, 749 A.2d 637, cert. denied, 253 Conn. 912, 754 A.2d 162 (2000); and is one of the factors considered in determining whether he manifested a subjective expectation of privacy in the common hallway. See id. In fact, the court found that the defendant failed to adduce any evidence that he had made efforts to establish an intention to maintain privacy in the common hallway. The landlord had access to the hallway, as did potential tenants of the vacant apartments and potential purchasers of the building itself, and there was no evidence that the defendant had the right to exclude anyone from the hallway. In short, the mutual use and control of the common hallway by the tenant and the property owner undermines the defendant's asserted expectation of privacy. See *State* v. *Torres*, supra, 501.

The judgment is affirmed.

In this opinion the other judges concurred.