STATE OF CONNECTICUT *v.* JAMES C. HARRIS
(AC 30060)

Bishop, Beach and Alvord, Js.

Argued March 15—officially released July 13, 2010

*John F. O'Brien,* for the appellant (defendant).

*John A. East III,* senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Anthony J. Spinella,* assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, James C. Harris, appeals from the judgment of conviction following his conditional plea of nolo contendere to one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). The plea followed the trial court's denial of the defendant's motion to suppress evidence that the police seized from a utility or storage closet in the hallway of an apartment building where the defendant lived. The defendant claims that the court's denial of his motion to suppress was improper because

he had an objectively reasonable and subjective expectation of privacy in the closet that was searched by the police.[1] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The defendant was arrested on August 28, 2007, and charged with one count of possession of narcotics in violation of General Statutes § 21a-279 (a), one count of possession of narcotics within 1500 feet of a licensed day care center in violation of § 21a-279 (d), one count of operation of a drug factory in violation of § 21a-277 (c), one count of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-278a (b) and one count of possession of narcotics with intent to sell within 1500 feet of a licensed day care center in violation of § 21a-277 (a). On May 20, 2008, the defendant filed a motion to suppress the evidence, which consisted of more than one pound of crack cocaine that was found in a hallway closet in the building where he resided and served as the superintendent.

On May 23, 2008, the court, *Nazzaro, J.*, conducted a hearing on the defendant's motion to suppress. The parties stipulated to the following facts: "The [d]efendant . . . is charged with six counts of narcotics offenses . . . relating to his alleged possession of a quantity of crack cocaine found in a utility or storage closet in the second floor hallway of an efficiency apartment building where the defendant lived. The defendant

---

[1] The defendant also claims that there was insufficient evidence to convict him of possessing the narcotics found in the hallway closet. Because the defendant entered a plea of nolo contendere, he waived all nonjurisdictional claims other than the specifically designated claim. We therefore will not review his claim of evidentiary insufficiency. *State* v. *Palkimas*, 116 Conn. App. 788, 795–96, 977 A.2d 705 (2009) (when defendant enters plea of nolo contendere conditional on right to appeal from denial of motion to suppress, appeal limited to whether court properly denied motion to suppress).

lived in apartment six, 84 Burnside Avenue, East Hartford . . . . On August 22, 2007, police officers and detectives with the statewide narcotics task force executed a search warrant on the premises belonging to [the defendant]. The defendant's apartment is on the second floor of the building. A corridor on the second floor lies between six apartments. Three apartments are on each side of the hallway. Approximately thirty-nine feet from the defendant's apartment doorway lay a 'utility closet.' The closet sits between two front end apartments that overlook Burnside Avenue on the south side of the building. The closet door is ordinarily but not always locked. Not all of the keys to the closet were accounted for at the time of the search. The closet was not an extension of the defendant's apartment. The accused did not have exclusive control over the closet. His name was not listed on the door of the closet. There was no name, number or other information on the closet door. The closet door, itself, is distinguished from the doors which access the eight apartments in that the closet door was 'substantially narrower' than the apartment doors. The building was owned by another individual [who] . . . also had access to the closet. The police learned that the defendant was also the superintendent for the apartments and had keys to all the doors in the building on a key ring.

"At approximately 11:00 a.m., members of the task force executed a warrant to search the defendant's apartment. The police also searched one or more automobiles thought to be associated with the defendant. In addition, the police searched the defendant, himself, who was home at the time the warrant was executed. A 'white powder residue on a single razor blade' was found in the defendant's residence.

"After searching the defendant's apartment, an officer with a canine entered the hallway where the canine, Zoey, began to pull the officer. The canine pulled the

officer toward [the] maintenance closet approximately thirty-nine feet away from the defendant's apartment door. Once at the door, the canine began to alert [the officer] to the presence of drugs within the closet. The door was locked. Officers then obtained the key to the closet from the defendant's key ring. Members of the task force unlocked the door. Once inside, the police found approximately 1.1 pounds of suspected crack cocaine."

The court issued its decision on the defendant's motion to suppress on May 23, 2008. On the basis of the stipulated facts, the court determined that the defendant's admission that he lacked exclusive access to the closet prevented him from claiming that he had a subjective expectation of privacy in the closet, and, thus, he lacked standing to challenge the search of the closet and the seizure of the narcotics. Accordingly, the court denied the defendant's motion to suppress. The defendant subsequently entered a conditional plea of nolo contendere to one count of possession of narcotics with intent to sell in violation of § 21a-277 (a) and was sentenced to five years imprisonment and five years of special parole. This appeal followed.

On appeal, the defendant claims that the court improperly determined that he did not have an objectively reasonable or subjective expectation of privacy in the hallway closet. We disagree.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a

more probing factual review when a constitutional question hangs in the balance." (Citation omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843, 955 A.2d 43 (2008).

"The touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *State* v. *Joyce*, 229 Conn. 10, 20, 639 A.2d 1007 (1994). Absent such an expectation, the subsequent police action has no constitutional ramifications. *State* v. *Mooney*, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Brown*, 198 Conn. 348, 355, 503 A.2d 566 (1986). In order to meet this rule of standing . . . a two-part subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances. . . . *State* v. *Joyce*, supra, 20. Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing; *State* v. *Callari*, 194 Conn. 18, 23, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985); and the trial court's finding [on the question of standing] will not be overturned unless it is legally or logically inconsistent with the facts found or involves an erroneous rule of law." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 92–93, 675 A.2d 866 (1996).

After a thorough review of the record, we conclude that the defendant did not establish a subjective expectation of privacy in the hallway closet. The defendant did not testify at the hearing on the motion to suppress. The parties submitted a joint stipulation of facts that did not suggest that the defendant had manifested a subjective expectation of privacy with respect to the closet. Furthermore, the defendant conceded at oral argument that there was no testimony that he held a subjective expectation of privacy in the hallway closet. It was the defendant's burden to establish the facts necessary to prove that he had standing to contest the search of the hallway closet. He has failed to meet that burden under the first prong of the test for standing. Accordingly, we conclude that the court did not improperly deny the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.