STATE OF CONNECTICUT *v.* REGINALD HARRIS
(10202)
(10203)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

Argued April 29—decision released August 4, 1992

*Matthew Ramia,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Jack W. Fischer,* deputy state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Narus,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals, following a jury trial, from the judgment of conviction of robbery

in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-8, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2), 53a-48 (a) and 53-8, and from the judgment of conviction of possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a). The defendant claims that the trial court (1) cast itself in the role of an advocate by questioning witnesses and making the prosecution's objections, thereby denying the defendant of his constitutional right to due process of law, and (2) improperly instructed the jury on reasonable doubt thus interposing a preponderance of the evidence standard. We affirm the judgments of conviction.

The jury reasonably could have found the following facts. At about 6:30 p.m. on October 12, 1989, the victim, Timothy Wallace, age eighteen, was walking with a friend, Eugene Finley, on Collins Street in Hartford. As they turned onto Huntington Street, they observed three men on the other side of the street. The three men crossed the street and came up behind the victim and Finley. The victim turned and saw that one of the men had grabbed Finley and was telling Finley to leave the area. As Finley left, one of the men put a gun to the victim's head and another of the men, the shortest one, flicked the victim's glasses off.

The man who had put the gun to the victim's head grabbed the victim's arm and ordered him to keep walking. The defendant, who was the tallest of the three and wearing a brown trench coat, carried a sawed-off shotgun and a duffel bag. The defendant walked on the victim's right side and the shortest man walked behind. They crossed several intersections and finally stopped in front of 122 Huntington Street.

When they stopped, the man who had put the gun to the victim's head told the victim to take off his jacket,

which was a green Whalers[1] jacket. The victim complied. The man then ordered the victim to give him his watch and the victim again complied. The man then struck the victim on the nose with the butt of the gun, fracturing the victim's nose and causing him to fall backwards onto the sidewalk. As the victim attempted to get up from the sidewalk, the defendant pushed him back down and struck him in the eye with the shotgun. The shortest man then demanded money and reached into the victim's pocket and removed approximately $54. The defendant then said "Let me shoot him," but one of the other men advised against it. The victim was then told to leave at which point he ran to a friend's house.

Shortly thereafter, the victim notified the police and gave them a description of the three men. Within a short time the police saw three men who fit the description given by the victim. The defendant, who was one of the three men spotted, was carrying a shotgun. All three men were taken into custody and the police recovered a sawed-off shotgun, a duffel bag, and a green Whalers jacket from them. The next day, the victim went to the police station where he identified all three men from photographs.

The defendant first claims that the trial court, by questioning witnesses and making objections for the prosecution, improperly cast itself into the role of an advocate. Because the defendant failed to raise any objection concerning these matters in the trial court, we review this claim only to determine whether the court's actions deprived the defendant of his constitutional right to due process of law. *State* v. *Golding,* 213 Conn. 233, 239–41, 567 A.2d 823 (1989); *State* v. *Fernandez,* 198 Conn. 1, 9–10, 501 A.2d 1195 (1985). The defendant can prevail on this unpreserved constitu-

---

[1] The Whalers are a professional hockey team from Hartford.

tional claim only if he can satisfy the four conditions enumerated in *State* v. *Golding,* supra. He must show that "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40. We conclude that the defendant cannot prevail on the claims of judicial misconduct under the principles of *Golding.*

The defendant culls from the record four incidents where the trial court restated or clarified a question asked of a witness and two incidents where the trial court prompted an objection by the prosecution.[2]

---

[2] The incidents as recited in the defendant's brief to this court are as follows:

(1) "Mr. Britt [Defense Counsel]: Did Detective Manzi tell you that one of the individuals was in the eight photos and it was up to you to pick him out?

"The Witness: He had three sets of photos. It was one in each photo, one in each set.

"The Court: What the question was that Mr. Britt asked, Mr. Wallace, is this: When Officer Manzi brought the photo arrays to you, did he suggest to you that there were people in there who had done the crime?

"The Witness: Yes.

"The Court: Okay. What did he tell you?

"The Witness: He said look through these pictures and when you think you know or when you think you have a positive ID of who it was, put the picture aside.

"The Court: He didn't tell you there was somebody in there that did the crime?

"The Witness: No.

"The Court: He told you to look at the pictures and see if somebody in there looked familiar?

"The Witness: Yes.

"The Court: All right. Go ahead. Put your next question."

(2) "Mr. Britt: Mr. Wallace didn't you swear to in your statement that one of the gentlemen was six feet?

"Before turning to the allegations made by the defendant, we recite certain well established principles regarding the responsibilities of the trial judge in conducting a criminal trial. ' "Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of

"The Witness: Yes.

"Mr. Britt: And didn't you also swear to in the statement that the other two gentlemen were five foot six inches?

"The Witness: I said about . . .

"Mr. Britt: About five foot six inches?

"The Witness: I said he was about six foot too.

"Mr. Britt: And then the other one was about six foot tall?

"The Witness: Yes.

"Mr. Britt: And that is your sworn testimony?

"The Witness: Yes.

"Mr. Britt: So you are telling us that one of the gentlemen was about your height, correct?

"The Witness: Yes.

"Mr. Britt: And the other two were substantially shorter than you right?

"The Witness: Not much shorter, but a little bit.

"Mr. Britt: You are six one?

"The Witness: Yes.

"Mr. Britt: They are about five six, six inches shorter than you, half a foot about?

"The Witness: Nope, no that day when I told him that I wasn't thinking, but I know—now I know that they are taller than five six.

"Mr. Britt: Because you are in the courtroom with the gentlemen?

"The Court: That question is argumentative in form. Is there objection?

"Mr. Naurus [Assistant State's Attorney]: Yes there is, Your Honor.

"The Court: Sustained.

(3) "Ms. Levy [Defense Counsel]: And since there has been some questioning already about watches, approximately what was the value of the watch which you now know was taken from you?

"The Court: Sustained.

"Mr. Naurus: Objection.

"The Court: Doesn't make any difference if it is worth a dollar and a quarter; a robbery is a robbery is a robbery if it is larceny accompanied by force. That is what the statute says. Go on to something else."

(4) "The Court: I just want to make sure I understand one thing clearly. That is this. I think I asked you probably about an hour and a half ago that when you talked with Mr. Manzi, and he gave you these three packets of pictures—.

"The Witness: Uh-huh.

judicial calm. U.S. Const., amend. XIV; Conn. Const., art. I, 8 . . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an 'atmosphere of perfect impartiality which is so much to be desired in a judicial proceed-

"The Court: I thought you told me in response to my question to what he did was, he handed you the pictures and said look in these and see if you see anybody that you recognize, is that so?

"The Witness: He told me to look—

"The Court: You've got to speak up now.

"The Witness: He told me to look through each set of the photos, right, and pick out the person who I thought was—who robbed me who was one of the suspects.

"The Court: See if there was somebody in there that had robbed you?

"The Witness: Yes."

(5) "Mr. Cosgrove [Defense Counsel]: Okay. But are you telling us today that you did not convey to him that there were any suspects in those group of photos?

"The Witness: No, sir.

"The Court: Yes, you are telling us that you did not?

"The Witness: That is correct.

"The Court: All right. Fine.

"Mr. Cosgrove: You did not tell him that you were showing any suspects within those arrays?

"The Witness: No, that is not my standard operations procedure when I show photo arrays to victims.

"Mr. Cosgrove: Okay. Perhaps I'm phrasing this wrong, but when I say you did not tell him, you said that is correct, is that right?

"The Witness: Okay. See if I can clarify this now.

"The Court: I don't care what the answer is; why don't I ask it this way? When you talked to him, did you tell him that contained in those twenty-four pictures were pictures of people that you suspected of having committed this crime?

"The Witness: No, sir.

"The Court: Very good."

(6) "Mr. Naurus: Okay. Have you had an opportunity since October 12 to discuss what occurred on that evening with these other individuals, with your son Willy Johnson; have you talked to him at all about what you guys were doing that evening?

"The Witness: Well, not really because they all know what happened, you know, so it wasn't really no reason to discuss it because they knew what happened.

"Mr. Naurus: But you never brought up the subject of what each of you were doing that evening since October 12 of last year?

ing.' . . . . " ' (Citations omitted.) *State* v. *Gordon,* 197 Conn. 413, 424D–25, 504 A.2d 1020 (1985); *State* v. *Fernandez,* supra, 10. . . . 'Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts.' *State* v. *Fernandez,* supra, 11." *State* v. *Tatum,* 219 Conn. 721, 740, 595 A.2d 322 (1991).

We turn first to the four instances in which the defendant claims that the trial court improperly asked witnesses questions. "A trial court has a discretionary right to intervene in the examination of witnesses where such intervention is necessary to clarify confusing testimony . . . or to elucidate a witness's understanding of a question. *State* v. *Smith,* 200 Conn. 544, 549–50, 512 A.2d 884 (1986)." *State* v. *Graham,* 21 Conn. App. 688, 692–93, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990). "The court's questioning of a witness is not necessarily improper because it draws attention to the strengths or weaknesses of a party's case." *State* v. *Smith,* supra, 550.

In the four incidents cited by the defendant where the trial court asked questions of a witness, we conclude that the trial court did no more than clarify

"The Witness: Well, we knew. We all knew what we was doing. We all knew that we were at my home, we all knew that we looked at the same shows, and they I know what time they left and they know that Keith left with them.

"The Court: I think what Mr. Naurus is asking you, Mrs. Johnson, is this. That from the day of the occurrence on October 12, 1989, until today, have you talked to your son Willy about this case or talked to him about what you were doing and he was doing that night or have you had no conversation with Willy?

"The Witness: Well, yes, yes, we—yes, we talked about what happened because, you know, we were trying to figure out, you know."

confusing testimony or facilitate the witness' understanding of a question. We find nothing improper in these actions of the trial court. In addition, the trial court gave the jury a curative instruction regarding its responsibility as the sole and absolute finder of fact.[3] "Such curative instructions are entitled to great weight and ordinarily prevent an appellate court from finding that the trial court committed reversible error. *State* v. *Fernandez,* supra." *State* v. *Graham,* supra, 702.

We now examine the two instances in which the defendant claims that the trial court improperly prodded the state into objecting to the defendant's line of questioning. We take particular note of the fact that the defendant's trial counsel did not consider "the interruption to be significant enough to warrant an objection or a motion for a mistrial. See *State* v. *Mack,* 197 Conn. 629, 642, 500 A.2d 1303 (1985)." *State* v. *Cazimovski,* 20 Conn. App. 190, 192, 565 A.2d 254 (1989). We also take note of the fact that the defendant does not claim that the trial court's rulings on the questions were improper.

In addition, neither line of questioning involved a critical, contested issue in the defendant's trial. One instance involved the victim's identification of the defendant and his cohorts. The defendant's identity, however, was not in serious dispute because he was caught by the police with the shotgun that was used in the robbery in his hand. In the other instance, the

---

[3] The trial court instructed the jury that: "Any reactions of the court during the trial in ruling on motions or objections by counsel or in questions that I may have asked of any witness or in setting forth the law in these instructions are not to be taken by you as any indication as to the court's opinion as to how you should determine the issues of fact. If you feel that the court has expressed or intimated any opinion as to any fact, you are not in any way bound by that opinion because what the verdict in this case shall be and what are the facts in this case are your sole and absolute and exclusive duty and responsibility."

question involved the value of a watch taken from the victim during the robbery. The value of the watch, however, had no relevance to the question of whether the victim had been the victim of an armed robbery.

After reviewing the six instances of alleged judicial misconduct, we conclude that the defendant cannot prevail on this unpreserved claim. The alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial. The defendant, therefore, cannot satisfy the third *Golding* condition.

The defendant also claims that the trial court improperly instructed the jury on the issue of reasonable doubt thereby interposing a preponderance of the evidence standard.[4] Although not preserved at trial, the defendant suggests that this claim can prevail under the *Golding* criteria. *State* v. *Golding,* supra. We disagree.

Connecticut courts have repeatedly approved the use of the challenged instruction, the two inference instruction, when the instructions as a whole correctly charged the jury regarding the state's burden of proof. *State* v. *Smith,* 219 Conn. 160, 166, 592 A.2d 382 (1991); *State* v. *Dyson,* 217 Conn. 498, 504, 586 A.2d 610 (1991); *State* v. *Falcon,* 26 Conn. App. 259, 272, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992). "[S]uch an instruction that principally serves to benefit the defendant is proper under our case law." *State* v. *Dyson,* supra. Here, the defendant acknowledges

---

[4] The challenged portion of the trial court's instruction is: "Now, let me also tell you that presumption of innocence also requires that if all of the evidence in this case fairly considered is capable of two reasonable interpretations, one of which is consistent with innocence, you must adopt the interpretation consistent with innocence because in that event you would have a reasonable doubt. So if you look at all of the evidence together and you can say it is consistent with innocence, it is also consistent with guilt, that is the totality of the evidence, you must give it the interpretation consistent with innocence because that is probably as good a definition of reasonable doubt as you'll hear. You'll hear another one, but it won't be that good."

that the trial court correctly instructed the jury on the state's burden of proof several times.

The defendant argues that the challenged instruction in this case is different from those cited previously because the trial court immediately followed the two inference instruction by telling the jury that it was as good a definition of reasonable doubt as they will get, and that they will hear another definition but it will not be as good as this one. We fail to see how this added language transformed the instruction from one that benefited the defendant into one that would require reversal by this court.

The judgments are affirmed.

In this opinion the other judges concurred.