******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOHN
WILLIAM DAVIS, JR.
(AC 35605)

Gruendel, Sheldon and Sullivan, Js.

*Argued October 23, 2014—officially released March 31, 2015*

(Appeal from Superior Court, judicial district of New
Haven, B. Fischer, J.)

*Laila Haswell*, assistant public defender, for the
appellant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's
attorney, with whom, on the brief, were *Michael Dear-
ington*, state's attorney, and *Lisa M. D'Angelo*, assistant
state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, John William Davis, Jr., appeals from the judgment of conviction, rendered after a jury trial, of carrying a pistol without a permit in violation of General Statutes § 29-35 (a), unlawful possession of a weapon in a vehicle in violation of General Statutes (Rev. to 2011) § 29-38 (a),[1] reckless endangerment in the first degree in violation of General Statutes § 53a-63, interfering with an officer in violation of General Statutes § 53a-167a (a), reckless driving in violation of General Statutes § 14-222 (a), and, after a trial to the court, criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The principal issue in this appeal is whether the evidence was insufficient to establish the defendant's conviction of unlawful possession of a weapon in a vehicle and carrying a pistol without a permit because the state failed to present evidence that the defendant lacked a state permit issued pursuant to General Statutes (Rev. to 2011) § 29-28 (b),[2] which is an essential element of both crimes. In addition, we must decide whether the trial court improperly, and in violation of the defendant's due process rights, intervened and assisted the prosecution at trial, thus warranting a new trial. With respect to the first issue, we agree with the defendant that the evidence is insufficient to sustain his conviction of the charges of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle. With respect to the second issue, we conclude that there was no constitutional impropriety on the part of the trial court judge. We, thus, affirm the trial court's judgment in part and reverse it in part.

The record reveals the following facts and procedural history. On the evening of July 24, 2011, at about 6:30 p.m., Officer Juan Ingles of the New Haven Police Department was stopped in his police cruiser on Poplar Street in New Haven, assisting another officer with a routine traffic stop, when he saw a grey Nissan with two male occupants coming down the street toward him. Ingles observed that the vehicle did not have a front marker plate and that the driver of the vehicle did not appear to be wearing a safety belt. As the vehicle approached, Ingles backed his cruiser into an adjacent driveway, from where he was able to see the vehicle's rear marker plate. Using the mobile data terminal in his cruiser, Ingles ran a registration check on the plate number and determined that it was assigned to a vehicle of a different make and model. Ingles pulled out of the driveway behind the vehicle, activated his cruiser's lights, and attempted to initiate a motor vehicle stop. The vehicle eventually came to a stop several blocks down the road, at the intersection of Poplar and Lombard Streets. Suspecting that the driver might attempt to flee once he got out of his vehicle, Ingles, using "a trick [he had] learned," opened and slammed shut the door of his cruiser, but he did not actually exit his

vehicle. Immediately after he had slammed his door shut, the Nissan, as anticipated, "took off."

The driver of the vehicle, followed by Ingles, traversed several roadways thick with pedestrian traffic at a high rate of speed and continued onto Interstate 91 northbound toward North Haven. After exiting the highway via the Middletown Avenue entrance ramp in New Haven, the driver continued to evade Ingles and several other police officers who had responded to Ingles' call for assistance. As patrol cars converged on the Nissan, it struck a curb and came to a stop in front of a Taco Bell restaurant. The driver and the passenger immediately fled the vehicle on foot, followed by Ingles, who had exited his cruiser to give chase. Ingles pursued the driver to the area directly behind the Taco Bell. There, he saw the driver climb on top of a dumpster, where he removed what was "obviously . . . a gun" from his waistband and held it above his head. The driver thrust the gun into the dumpster, which was piled high with trash, and leapt to the ground. The driver then ran to a nearby residential property but was ultimately apprehended by Ingles when he reached a fence at the rear of the property that obstructed his path. Following a struggle with Ingles and two other officers, who had just arrived on the scene, the driver was handcuffed and taken into custody. Ingles subsequently identified the driver as the defendant from the state of Connecticut identification card that he was carrying on his person.

Once the defendant was in custody, Ingles returned to the dumpster where he had seen him stash the gun. Acting on information provided by Ingles, other New Haven police personnel, working with a K-9 unit trained to locate firearms, discovered a pistol at the bottom of the dumpster beneath several bags of garbage and some loose debris. Ingles identified it as the same pistol the defendant had been holding in his hand when he was standing on top of the dumpster. The gun was later examined by personnel from the state forensic science laboratory, firearm and tool mark section, who determined that it was a Smith and Wesson, Model SW 40F, semiautomatic pistol, with a barrel length of four and one half inches. The gun was inspected for fingerprints and swabbed for DNA testing, however, no latent fingerprints were recovered and no DNA test results were ever produced. The gun was also test fired and found to be operable.

The defendant was arrested and later charged by long form information with criminal possession of a firearm in violation of § 53a-217 (a) (1), carrying a pistol without a permit in violation of § 29-35 (a), altering firearm identification marks in violation of General Statutes § 29-36 (a), unlawful possession of a weapon in a vehicle in violation of § 29-38 (a), criminal attempt to assault a police officer in violation of General Statutes §§ 53a-

49 (a) (2) and 53a-167c (a) (1), reckless endangerment in the first degree in violation of § 53a-63, interfering with an officer in violation of § 53a-167a (a), and reckless driving in violation of § 14-222 (a). The defendant pleaded not guilty and elected a jury trial on all charges except criminal possession of a firearm, on which he elected a trial to the court.[3] The case was tried to a jury of six before the court, *B. Fischer, J.*, on December 10 and December 11, 2012. The jury found the defendant guilty of carrying a pistol without a permit, unlawful possession of a weapon in a vehicle, reckless endangerment in the first degree, interfering with an officer, and reckless driving.[4] Thereafter, the court found the defendant guilty of criminal possession of a firearm. The court rendered judgment accordingly, sentencing the defendant to a total effective term of twelve years incarceration, execution suspended after nine years, with a three year period of probation.[5] This appeal followed.

I

The defendant first claims that the evidence was insufficient to sustain his conviction of the charges of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle. Specifically, he claims that the evidence was insufficient to establish that he lacked a valid permit to lawfully carry a pistol on the date of the incident, which is a required element of both crimes.[6] We agree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the [decision]." (Internal quotation marks omitted.) *State* v. *Elsey*, 81 Conn. App. 738, 743–44, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

"[An] appellate court's first task, in responding to a claim of evidentiary insufficiency, is to apply the traditional scope of review to the evidence. That requires that . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict. . . . We note that a claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 77, 993 A.2d 970 (2010).

This court's inquiry necessarily begins with an exami-

nation of the elements of the charged offenses. With respect to the defendant's conviction of the charge of carrying a pistol without a permit, § 29-35 (a) provides in relevant part that: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." Accordingly, the required elements of § 29-35 (a) are that the defendant: "(1) carried a pistol, (2) for which he lacked a permit, (3) while outside his dwelling house or place of business." *State* v. *Douglas*, 126 Conn. App. 192, 209, 11 A.3d 699, cert. denied, 300 Conn. 926, 15 A.3d 628 (2011).

With respect to the defendant's conviction of the charge of unlawful possession of a weapon in a vehicle, § 29-38 (a), provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof." General Statutes (Rev. to 2011) § 29-38 (a).[7] In a prosecution under § 29-38, the state must prove: "(1) that the defendant owned, operated or occupied the vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no permit or registration for the weapon." *State* v. *Delossantos*, 211 Conn. 258, 273, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

Sections 29-35 and 29-38 incorporate by reference the licensing statute, § 29-28,[8] which sets forth the necessary qualifications and process by which to obtain a permit to lawfully carry a pistol or revolver outside of one's dwelling residence or place of business. Section 29-28 (b) outlines the two step permit process.[9] Applicants must first apply for, and be approved for a temporary state permit. General Statutes (Rev. to 2011) § 29-28 (b). The application for a temporary state permit must be submitted to, inter alia, the police chief in the applicant's town of residence or the town in which he maintains a place of business.[10] Assuming that the applicant meets the qualifying criteria under the statute, including the completion of a safety course and a background check, the local authority issues a sixty day temporary state permit, which is nonrenewable. See General Statutes § 29-30 (c). Upon the issuance of a temporary state permit, the local authority is required to forward the application to the Commissioner of Public Safety. General Statutes (Rev. to 2011) § 29-28 (b). The sixty day permit issued by the local authority is valid

statewide and obtaining it is a prerequisite to applying for and receiving a state permit, which enables its holder to lawfully carry a pistol or revolver for five years. General Statutes § 29-30 (c).

Our Supreme Court, in *State* v. *Beauton*, 170 Conn. 234, 240, 365 A.2d 1105 (1976), in considering § 29-38, held that the burden of establishing that the defendant lacks a proper permit falls on the state.[11] "In Connecticut, there is no blanket prohibition against carrying or possessing a pistol." Id., 242. The licensing provision, § 29-28, is "part of the enacting or prohibition clause of the statute . . . defining the corpus delicti." (Footnote omitted.) Id., 241. Thus the law does not penalize mere ownership or possession of a firearm, but is instead aimed specifically at prohibiting the *unlicensed* carrying and vehicular transport of a pistol in the public arena. See id. Our appellate courts have, thus, carefully considered the specific licensing provisions set forth under § 29-28 (b) when assessing whether there is evidence to support convictions under §§ 29-35 and 29-38. See, e.g., *State* v. *Brunson*, 36 Conn. App. 576, 582, 651 A.2d 1335 (discussing § 29-35 and its incorporation of the geographical limitations set forth in § 29-28), cert. denied, 232 Conn. 920, 656 A.2d 669 (1995); see also *State* v. *Beauton*, supra, 170 Conn. 239 (state presented evidence pertaining to local permit in one municipality but failed to present evidence that defendant lacked state permit or permit from other municipality); *State* v. *Nelson*, 17 Conn. App. 556, 561–62, 555 A.2d 426 (1989) (same). Under these authorities, a conviction for the unlicensed carrying or unlawful vehicular transport of a pistol cannot stand without proof beyond a reasonable doubt that the defendant lacked a valid permit to carry the pistol issued pursuant to § 29-28 (b).

Against this background, we consider the defendant's claim that the state here failed to prove beyond a reasonable doubt that he lacked a valid permit to lawfully carry a pistol. Our analysis of the defendant's claim is necessarily based upon the evidence presented at trial. On the first day of trial, Detective Vincent Imbimbo of the Connecticut State Police Firearms Unit testified for the state concerning the defendant's alleged lack of a permit. Imbimbo reported that he had conducted a search of the state database to determine whether a state permit had been issued to a John William Davis, Jr., birthdate, November 29, 1998. Imbimbo also testified that his search had not disclosed a state permit issued to a person with that name and birthdate.[12] On cross-examination, defense counsel questioned Imbimbo as to whether his search of the state database would have disclosed if a temporary, sixty day permit had ever been issued to the defendant by the local authority of his town of residence or place of business. The following colloquy on that issue ensued:

"[Defense counsel]: Detective, when you say you

checked the database do you check the database that includes both the town as well as the state permits . . . ?

"[Imbimbo]: The town permit would be valid for sixty days, at which point he could carry, you could not purchase off it.

"[Defense counsel]: Okay. So is it possible that there would be a town permit issued separate and distinct from the state permit, which would be issued after one had obtained a town permit?

"[Imbimbo]: Correct.

"[Defense counsel]: So, indeed, [the defendant] may have in fact possessed a town permit and never in fact went to the next step to evolve to a state level; is that correct?

"[Imbimbo]: Right. If he did have a temporary permit from the town it would be valid for sixty days from the issuance from the town.

"[Defense Counsel]: Uhm-hm. And did you check the possibility of him having a town permit?

"[Imbimbo]: I cannot check the possibility of him having a town permit.

"[Defense Counsel]: You can't.

"[Imbimbo]: No.

"[Defense Counsel]: So there is a possibility that at one point, perhaps even at this point during the time in question that he may have in fact possessed a valid town permit?

"[Imbimbo]: Possibility, yes. If it never came to our office to get a valid state permit it's a possibility."

On redirect examination of Imbimbo, the state sought clarification with respect to the permit process as follows:

"[The Prosecutor]: So an individual can hold a temporary city permit for sixty days prior to it coming to your office?

"[Imbimbo]: Correct. The town will do the background [check] on him, have him apply to the town, [and] the town will do their background [check] on him. Once the temporary permit is issued, if it is issued, it comes up to our office and we run everything all over again." Following Imbimbo's testimony, the state sought and was granted a continuance for the purpose of bringing in a second witness to testify regarding the issuance of a temporary sixty day permit.

The following day, Officer Manmeet Colon of the New Haven Police Department testified for the state that he had conducted a records check of the New Haven permit database and determined that the defendant did not have a temporary permit issued by the

city of New Haven. Colon explained that an individual seeking a pistol permit is first required to submit an application for a temporary permit in his town or city of residence. According to his testimony, the New Haven database contains all applications and temporary permits issued to residents of New Haven.[13] The state, however, presented no evidence to show that the defendant was a resident of the city of New Haven or that his place of business was located there. Focusing on this discrepancy, defense counsel asked Colon whether his search of the New Haven database had enabled him to determine if the defendant had a temporary permit "not within the bounds of New Haven." Colon responded that he could not make that determination.

As previously noted, the state was required, to meet its burden of proof on the charges of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle, to produce sufficient evidence to prove beyond a reasonable doubt that the defendant lacked a permit to carry a pistol on the date of the incident. The licensing statute, § 29-28 (b), provides that the holder of a temporary state permit may lawfully carry a firearm for sixty days prior to applying for a five year state permit. It therefore was necessary for the state to present evidence that such a permit had not been issued to the defendant by the authority in his town of residence or place of business in the sixty day period immediately preceding the date of the alleged conduct at issue here. Colon's testimony, which was clearly offered by the state for this purpose, shows only that the defendant did not have a temporary state permit issued by the city of New Haven. The state failed, however, to establish that the defendant was a resident of New Haven or that his place of business was there during the sixty day period immediately preceding his alleged conduct in this case. Accordingly, the state did not establish that the defendant, at the time of his arrest, lacked a temporary state permit issued by the local authority of his town of residence or place of business pursuant to § 29-28 (b), as required to convict him under either § 29-35 or § 29-38.

The state concedes that there was no direct evidence as to the defendant's residence or place of business. Nevertheless, it argues that the jury could have inferred that the defendant lacked a temporary state permit to carry a pistol on the date here at issue based upon other evidence presented at trial. In support of this contention, the state argues first that because there was evidence that Colon, a New Haven police officer, had searched the New Haven database for evidence as to whether the city had ever issued a temporary state permit to the defendant, the jury could infer from his efforts that the defendant was indeed a resident of New Haven. This argument lacks merit. Colon's testimony reveals that he had merely conducted a search of the city's database to determine if a temporary state permit

had ever been issued to a person with the defendant's name and birth date. His testimony was devoid of any facts tending to establish that New Haven was ever the defendant's residence or place of business.

Next, the state argues that the defendant's flight from pursuing police officers and the discarding of the pistol in the dumpster just before his arrest evidences his guilty conscience, and, thus, supports an inference that he did not possess a valid permit to carry a pistol. Our law is clear, however, that consciousness of guilt evidence cannot be relied on to prove the required substantive elements of a crime. See *State* v. *Bell*, 113 Conn. App. 25, 50, 964 A.2d 584, cert. denied, 291 Conn. 914, 969 A.2d 175 (2009). The defendant's conduct on the date of the incident, even if indicative of consciousness of guilt, cannot, without impermissible speculation, relieve the state of all or any portion of its burden of proving that he lacked a valid permit to carry a pistol.

Finally, the state argues, based on its reading of § 29-28 (b) and Imbimbo's testimony, that Imbimbo's search of the state permit database was itself sufficient to prove that the defendant had never been issued a temporary state permit by the local authority in his town of residence or place of business because a permittee's application for such a temporary state permit must be forwarded to the state for further review as a prerequisite to obtaining a five year permit. In this case, then, the state argues that it is unlikely that any search of the state database for a five year pistol permit issued to the defendant, of the kind conducted by Imbimbo, would have failed to yield information about any sixty day temporary state permit ever issued to him by the authority in his town of residence or place of business. This argument is also unavailing.

With respect to the state's reliance on § 29-28 (b), there was no request for an instruction on the licensing statute, and, thus, it was not made available to the jury.[14] As a result, the jury did not have any evidentiary basis for drawing the contended for inferences regarding the permit process that the state now offers in hindsight to salvage the challenged conviction. The only description of the permit process before the jury was that given in the previously quoted testimony of its witnesses, Imbimbo and Colon, which unambiguously identifies the very gap in the state's evidence that the defendant highlights and relies on in this appeal. Imbimbo expressly stated that the search he conducted could not reveal whether the defendant had obtained a temporary state permit. As a result, he agreed that there was a possibility, consistent with the results of his search, that the defendant possessed a valid permit issued by the local authority of his town of residence or place of business on the date of the incident. Colon confirmed that his search of the New Haven database for a temporary state permit issued to the defendant was limited

to applications made in the city of New Haven.[15]

To obtain the challenged conviction, the state was tasked with producing sufficient evidence for the jury to find that the defendant lacked a permit to carry the pistol on the date of the incident. In the present case, "the state was not faced with an impossible task in sustaining its burden of proof as to the essential elements of the crime with which the defendant was charged." *State* v. *Beauton*, supra, 170 Conn. 242. The permit element is easily determined and susceptible to proof. In spite of this, there is a dearth of evidence to establish that element in this case. "An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." *State* v. *Hill*, 201 Conn. 505, 512, 523 A.2d 1252 (1986). Here, the state failed to prove an essential element of §§ 29-35 and 29-38, and, thus, the defendant's conviction of those charges cannot stand.[16]

## II

We next consider the defendant's claim that the trial judge improperly assisted the prosecution at trial. The defendant argues that the court assisted the prosecution by highlighting gaps in its case and suggesting further action, specifically with respect to the permit evidence, and this lack of impartiality constituted structural error that permeated the defendant's trial, thus, entitling him to a new trial on the remaining charges. We disagree.

At the outset, we note that the defendant did not object to the trial court's alleged improprieties at trial; however, because the record is adequate for review and the defendant raises an issue that has constitutional implications, we review the defendant's claim. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[17]

The right to an impartial tribunal is a fundamental component of due process. *Weiss* v. *United States*, 510 U.S. 163, 178, 114 S. Ct. 752, 127 L. Ed. 2d 1 (1994). "The principles guiding a trial judge in conducting a criminal trial are well established. Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so. . . .

"Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must

always be cautious and circumspect in his language and conduct. . . . Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopes*, 78 Conn. App. 264, 274–75, 826 A.2d 1238, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

It is axiomatic that a judge may not become an advocate for either of the parties at trial. *State* v. *Echols*, 170 Conn. 11, 13–14, 364 A.2d 225 (1975). In this case, however, the defendant has failed to identify any conduct on the part of the trial court that raises a question with respect to its impartiality. The defendant identifies two ways in which it claims the court acted improperly. First, the defendant directs our attention to a sidebar discussion following Imbimbo's testimony that he suggests shows that the court, during a conference in chambers, implicitly encouraged the state to request a continuance to call a representative to testify to the defendant's lack of a temporary state permit. Second, the defendant identifies the court's intervention on two occasions during the presentation of the evidence to correct the prosecutor's misstatement as to the defendant's date of birth, which was used by Imbimbo and Colon to verify whether the defendant possessed a valid permit.

As to the defendant's first claim, there is nothing in the record to support the defendant's contention that the court encouraged the prosecution to elicit additional information regarding the defendant's lack of a temporary state permit. At sidebar, the court asked the prosecutor whether she could establish that the defendant was ineligible for a permit as a result of one of the disqualifying factors delineated under § 29-28 (b), specifically, by showing that the defendant was under the age of twenty-one at the time of the offense. The prosecutor's subsequent request for a continuance for the purpose of bringing in another representative to testify as to the defendant's lack of a temporary state permit was not related to the court's inquiry regarding the disqualifying criteria under § 29-28 (b), nor did it appear to be at the court's solicitation.

As to the defendant's second claim, that the court improperly supplied the prosecutor with the defendant's correct birthdate, the record shows that the prosecutor made conflicting statements concerning the defendant's date of birth during trial. Thus, any attempt by the court to seek clarification was not improper. The trial court is free to intervene to clarify the testimony and assist the jury in understanding the evidence provided that he is nonpartisan in doing so. *State* v. *Perez*, 146 Conn. App. 844, 851, 79 A.3d 149 (2013), cert. denied, 311 Conn. 909, 83 A.3d 1163 (2014). Finally, we note that the conduct of the court that the defendant assails on appeal, and the claimed resultant harm, is

undermined by the record in this case, which shows that the defendant did not object or move for a mistrial following the court's interventions. See *State* v. *Harris*, 28 Conn. App. 474, 481, 612 A.2d 123 (taking particular note that defense counsel did not view court's conduct to be so prejudicial as to warrant objection or motion for new trial), cert. denied, 223 Conn. 926, 614 A.2d 828 (1992).

The court's conduct in this case certainly did not amount to "tilting the balance against the accused and plac[ing] the judge . . . on the side of the prosecution." (Internal quotation marks omitted.) *State* v. *Peloso*, 109 Conn. App. 477, 492, 952 A.2d 825 (2008). Upon our review of the alleged instances of judicial impropriety cited by the defendant, we conclude that the defendant has failed to show that there is a constitutional violation.

The judgment is reversed only as to the conviction of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle and the case is remanded with direction to render judgment of acquittal on those charges. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] All references in this opinion to § 29-38 are to the 2011 revision of the statute unless otherwise noted.

[2] All references in this opinion to § 29-28 are to the 2011 revision of the statute unless otherwise noted.

[3] As to that count, the defendant stipulated that he was previously convicted of larceny in the second degree in violation of General Statutes § 53a-123.

[4] The jury acquitted the defendant of altering firearm identification marks and criminal attempt to assault a police officer.

[5] The court sentenced the defendant as follows: on count one, on the charge of criminal possession of a firearm, a term of five years incarceration; on count two, on the charge of carrying a pistol without a permit, a term of five years incarceration, execution suspended after two years, to run consecutive to count one; on count four, on the charge of unlawful possession of a weapon in a motor vehicle, a term of five years incarceration to run concurrent with counts one and two; on count six, on the charge of reckless endangerment in the first degree, a term of one year incarceration, to run consecutive to counts one and two; on count seven, on the charge of interfering with an officer, a term of one year incarceration, to run consecutive to counts one, two, and six; on count eight, on the charge of reckless driving, a term of 30 days incarceration, concurrent to the prior counts.

[6] The defendant also challenges the court's jury instructions on these charges on the ground that it did not instruct the jury on § 29-28 (b), which governs the permit requirement. Because we decide that the evidence was insufficient to sustain the conviction, we do not reach the defendant's claim of instructional error.

[7] The provision in § 29-38 (a) stating that "the presence of any such weapon . . . in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof" was held unconstitutional in *State* v. *Watson*, 165 Conn. 577, 597, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974), on the ground that it necessarily has the effect of placing the burden of proof on the alleged violator.

[8] General Statutes (Rev. to 2011) § 29-28 (b) provides in relevant part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority, such chief of police, warden or selectman may issue a temporary state permit to such person to carry a pistol or revolver within the state, provided such authority shall

find that such applicant intends to make no use of any pistol or revolver which such applicant may be permitted to carry under such permit other than a lawful use and that such person is a suitable person to receive such permit. . . . Upon issuance of a temporary state permit to the applicant, the local authority shall forward the original application to the commissioner. Not later than sixty days after receiving a temporary state permit, an applicant shall appear at a location designated by the commissioner to receive the state permit. Said commissioner may then issue, to any holder of any temporary state permit, a state permit to carry a pistol or revolver within the state. . . ."

[9] In 2001, § 29-28 (b) was amended. See Public Acts 2001, No. 01-130, §4. Under the previous law, an individual who wished to carry a gun was required to hold a local permit in the town of his residence. General Statutes (Rev. to 2001) § 29-28 (b). If an individual wished to carry a gun outside his town of residence, a separate statewide permit was required. Both permits were valid for five years, but the state permit could be renewed even if the local permit was allowed to expire. General Statutes (Rev. to 2001) § 29-30 (b) and (c). In 2001, the dual permit system was eliminated and replaced with the current two step, one permit system. See General Statutes (Rev. to 2015) § 29-28 (b).

[10] The statute has since been amended by No. 13-3, § 57, of the 2013 Public Acts to remove the option of applying for a permit in the town of one's place of business.

[11] This differs from some jurisdictions in which the defendant must produce evidence of a license or permit to show that his conduct falls within an exception to the general prohibition against carrying a firearm, and, thus, constitutes an affirmative defense. See, e.g., *Commonwealth* v. *Jones*, 372 Mass. 403, 406, 361 N.E.2d 1308 (1977); *People* v. *Henderson*, 391 Mich. 612, 616, 218 N.W.2d 2 (1974); *Seattle* v. *Parker*, 2 Wn. App. 331, 332, 337, 467 P.2d 858, review denied, 78 Wn. 2d 993 (1970).

[12] On appeal, the defendant highlights the fact that his birthdate is in fact November 29, 1988.

[13] Colon described the permit process as follows:

"[Prosecutor]: Just for clarity, there is no such thing as a local permit; is that correct?

"[Colon]: There is no such thing as a local permit; it's called a temporary state permit.

"[Prosecutor]: And when one goes to apply for a temporary state permit where are they supposed to go?

"[Colon]: They're supposed to go to their town where they reside or the city.

"[Prosecutor]: Where they reside?

"[Colon]: Correct.

"[Prosecutor]: So, in your database . . . should be any New Haven resident that applied or has a temporary state pistol permit?

"[Colon]: Yes."

[14] Moreover, even if the jury had been instructed on the procedure dictated by § 29-28 (b), a statement of statutory procedure does not serve to prove that the procedure was followed. Additionally, we note that the statute itself is vague as to the details surrounding the permit process, particularly with respect to timing, which is not specified.

[15] This court conducted a searching review of the record in this case for any evidence from which to circumstantially infer the defendant's residence or place of business. We note that there was testimony from Ingles regarding his use of the defendant's Connecticut identification card to identify him at the time of his arrest, however, the identification card was not introduced into evidence, and there was no testimony as to its particulars, i.e., the defendant's address. The record is devoid of any information pertaining to the defendant's residence or place of business.

[16] Having concluded that there was insufficient evidence of the defendant's lack of a valid permit, we have no occasion to consider the defendant's additional claim, based on *State* v. *Smith*, 9 Conn. App. 330, 339–40, 518 A.2d 956 (1986), that there is insufficient evidence to sustain his conviction of the charge of unlawful possession of a weapon in a vehicle because the state failed to establish that the passenger of the defendant's vehicle lacked a valid permit.

[17] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude

alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [T]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable . . . and under those two prongs, [t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error." (Citations omitted; internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 743–44, 91 A.3d 862 (2014).

———————————————